# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS AT AUSTIN

_____X

GEORGE ALLIBONE M.D.

Plaintiff

Civil Action<br>No.: 1:17-CV-00064

-vs.-

Texas Medical Board ("Board"); Michael Arambula, M.D.,
Pharm.D. in his official capacity as member of the Board
and individually; Julie K. Attebury in her official capacity
as member of the Board and individually; David Baucom
in his official capacity as member of the Board and individually;
Frank Denton in his official capacity as member of the Board and
individually; John Ellis, Jr., J.D. in his official capacity as
member of the Board and individually; Carlos L. Gallardo
in his official capacity as member of the Board and individually;
Manuel Guajardo M.D. in his official capacity as
member of the Board and individually; John Guerra, D.O.
in his official capacity as member of the Board and individually;
Scott Holiday, D.O. in his official capacity as member of the
Board and individually; Margaret McNeese M.D. in her official
capacity as member of the Board and individually; Allan Shulkin
M.D. in his official capacity as member of the Board and individually;
Robert D. Simonson, D.O. in his official capacity as member of the
Board and individually; Wayne M. Snoots M.D. in his official capacity
as member of the Board and individually; Karl Swann M.D. in his
official capacity as member of the Board and individually; Paulette
Barker Southard in her official capacity as member of the Board and
individually; Surenda K. Varma M.D. in his official capacity as
member of the Board and individually; Stanley Wang M.D.
in his official capacity as member of the Board and individually;
Timothy Webb J.D.in his official capacity as member of the Board
And individually; George Willeford III M.D. in his official capacity as
member of the Board and individually,

Defendants

_____X

## VERIFIED COMPLAINT FOR ANTITRUST INJUNCTION AND DAMAGES PURSUANT TO  15 USC § 15 and 15 USC §26; FOR INJUNCTIVE RELEIF PURSUANT TO 42 USC SEC. 1983 AND FED. R. CIV. PROC.  65 AND FOR DECLARSATIORY JUDGMENT PURDUANT TO 28 USC §2201ET.SEQ.

COMES NOW the Plaintiff, George Allibone M.D. by his undersigned attorney and sets forth the follows as and for his complaint for injunctive relief and damages under 15 USC Secs. 15 and 26, for permanent injunction under 42 USC Sec. 1983, for a Preliminary Injunction under FRCP 65 and for a declaratory judgment pursuant to 28 USC Sec. 2201 et.seq.

## I.    INTRODUCTION - RELIEF SOUGHT.

1.    From April 1, 2016 through the date of this complaint the defendants, market participants, conspired with each other and entered in an agreement to violate 15 USC Sec. 1 and 15 USC Sec. 2.

2.    In furtherance of their conspiracy the defendants used and continue to use their official capacities as state officials. They pretended to act under the provisions of the Texas Medical Practice Act and those of the regulations of the Texas Medical Board for the purposes of restricting competitive medical services in the Texas markets and for the further purposes of creating a monopoly for the benefit of allopathic physicians.

3.    The defendants' anticompetitive conduct specifically targets the submarket of physicians offering complementary and alternative medicine ("CAM") and integrative medicine services to patients who seek the same.

4.    The defendants conspired and continue to conspire to violate 15 USC Sec. 1 and 15 USC Sec. 2 by engaging in horizontal restraint of trade, horizontal market reallocation, price fixing and the creation of a monopoly as alleged in this complaint.

5.    As a pretext for initiating their conspiracy to violate the Sherman Antitrust Act, the defendants knowingly used illegitimate complaints received from individuals looking to further a documented personal extortionist scheme aimed at exacting money from the Plaintiff.  These allegations are further specifically amplified below.

2

6.      As a further pretext to facially legitimize their conspiracy to violate the Sherman Antitrust Act, the defendants also knowingly used the illegitimate complaint of a discharged and disgruntled employee of the Plaintiff. The complaint allegations filed by the disgruntled employee were aimed at specific medical issue regarding specific patients. They were found by defendants' own allopathic medicine expert reviewers and ISC panels to be unfounded.

7.       Defendants' own expert panelists and defendants' Informal Show Compliance ("ISC") panels themselves found in several instances that the allegations of the initial complaints received from the three individuals identified above and below, were unsubstantiated.

8.      Notwithstanding these findings appearing in defendants' own consultant expert panel reports, the defendants fabricated their own allegations and issues which went beyond the scope of the initial complaints.  These allegations were fabricated in furtherance of defendants' conspiracy to violate the Sherman antitrust Act.

9.      At least in one instance one of the three ISC panels convoked by the defendants in furtherance of their conspiracy to violate the Sherman Antitrust Act, found that because the expert panelist reviewers were not qualified to render opinions regarding CAM and integrative medicine issues, the Plaintiff did not violate any standard of care or any provision of Texas law by offering such services.

10.      Notwithstanding these findings, the defendants threatened and recommended to stage formal license disciplinary proceedings in furtherance of their conspiracy to violate the antitrust statutes and to stage a bad faith prosecution.

11.      In the following two staged ISC conferences, in furtherance of defendants' conspiracy to violate the Sherman Antitrust Act, the ISC panelists inexplicably reversed course. They used the unqualified experts' reports as a pretext to "indict" CAM and integrative medicine

services in their entirety and to legitimize the furthering of the process aimed at banning and restricting such services altogether.

12.     The defendants fabricated issues and grounds for prosecution which admittedly could not be found either in the initial complaints or in the documents submitted by the defendants during the ISC process.

13.     The defendants chose to proceed with their conspiracy to formally seek to restrict Plaintiff's offering of competitive CAM and integrative medicine medical services, while no legitimate grounds for such prosecution were found to exist in the first place.

14.     The defendants conspired with each other to violate 15 USC Sec 1. and 15 USC Sec 2 by falsely invoking the investigative and ISC process of the Texas Medical Practice Act and of the Board's own regulations.

15.     In furtherance of their conspiracy to violate the Sherman Antitrust Act, the defendants used bogus medical reviewers with no qualifications or medical expertise relevant to Plaintiff's specialty or practice of medicine. The so called "experts" generated reports aimed at the elimination of CAM and integrative medicine services.

16.     The defendants further used co-conspirator ISC panel members to fabricate disciplinary charges aimed at legitimizing their anticompetitive conduct while seeking to restrict plaintiff's practice of CAM and integrative medicine.

17.     In addition, in violation of Plaintiff's Fourteenth Amendment constitutionally protected due process, the defendants also staged and propose to maintain a bad faith license prosecution against the Plaintiff as set forth below in this complaint.

18.     The Plaintiff seeks an injunction pursuant to 15 USC Sec. 26 enjoining the defendants, from engaging in anticompetitive conduct in violation of the Sherman Antitrust Act as alleged below in this complaint.

19.     The Plaintiff seeks the recovery of treble damages pursuant to 15 USC Sec. 15 against the defendants for antitrust violations as set forth below.

20.     The Plaintiff seeks a permanent injunction pursuant to 42 USC Sec. 1983 enjoining the defendants from violating his constitutionally protected due process rights by maintaining a bad faith prosecution, as alleged below.

21.     The Plaintiff seeks a declaratory judgment pursuant to 28 USC Sec. 2201 et. seq. as follows: (i) declaring defendants' conduct as alleged in this complaint as illegal and unconstitutional; (ii) declaring defendants' conduct alleged in this complaint as acts carried in furtherance of a conspiracy for violate the Sherman Antitrust Act 15 USC Sec. 1 and 15 USC Sec.

22.     The Plaintiff is seeking a permanent injunction pursuant to Federal Rule of Civil Procedure ("FRCVP") 65 enjoining the defendants from violating US Constitution Art. I Sec. 8 Cl. 3 as alleged below in this complaint.

23.     The Plaintiff is seeking a preliminary injunction pursuant to FRCVP 65, pending the hearing and determination of the merits of this complaint as follows:

(a)     Preliminarily enjoying the defendants, their servants, agents and assigns from further engaging in anti-competitive conduct in violation of the Sherman Antitrust Act by using the Texas investigative, ISC and formal license disciplinary process to further their conspiracy aimed at restricting Plaintiff' CAM and integrative medicine competitive services as alleged in this complaint;

(b)       Preliminarily enjoining the defendants, their servants, agents and assigns from violating or causing to violate Plaintiff's constitutionally protected due process rights as set forth in this complaint by maintaining a bad faith prosecution;

(c)       Preliminarily enjoining the defendants from taking any action or causing any action to be taken against Plaintiff's medical license as such actions are illegal, unconstitutional and in derogation of Plaintiff's due process rights as alleged in this complaint;

(d)       Preliminarily enjoining the defendants from violating or causing to violate US Constitution Art. I Sec. 8 Cl. 3 as alleged in this complaint.

## II.    THE DEFENDANTS DO NOT HAVE IMMUNITY BECAUSE THEY ARE MARKET PARTICIPANTS AND THE STATE OF TEXAS DOES NOT EXERCISE INDEPENDENT STATE SUPERVISION OVER DEFENDANTS' ANTITRUST ACTIONS.

24.       The Board is an agency of the state of Texas. The Board is a regulatory and enforcement licensing agency established under the provisions of the Texas Medical Practice Act.

25.       The Board is charged with administering and enforcing the medical licensing regulatory system and the practice of medicine in Texas.

26.       The Board does not act in an advisory capacity. The Board is not an agency which is authorized to be used by its members to further private financial interests and to unreasonably restrict trade.

27.       The Board is staffed and controlled by the defendants who have financial interests in the occupation that is being regulated, namely medicine.

28.       The Board is staffed by the defendants who are health care practitioners and who are and were at all the relevant times hereinabove and hereinafter mentioned engaged in the practice of medicine for profit in the state of Texas.

29.     At all the times relevant to this action, a majority of the members of the Board were and are physicians or healthcare practitioners licensed by the Board.

30.     They have incentive to limit competition from other physicians who provide competitive medical services of a different type and in a different manner than the services provided by the defendants, namely allopathic medical services.

31.     The defendants who are physician members of the Board (identified below) are "market participants" for the purposes of the Sherman and Clayton Antitrust Acts.

32.     A member of a state regulatory board is considered to be an active market participant in the occupation the board regulates if such person (i) is licensed by the board or (ii) provides any service that is subject to the regulatory authority of the board. These are the present members of the Texas Medical Board.

33.     If a board member participates in any professional or occupational sub-specialty that is regulated by the board, then that board member is an active market participant for purposes of evaluating the active supervision requirement.

34.     In this case a majority of the Board members engage in the occupation which is regulated by the Board, namely the practice of medicine.

35.     It is no defense to antitrust scrutiny that the board members themselves are not directly or personally affected by the challenged restraint.

36.     Even if the members of the Board are physicians who do not offer the same CAM and integrative medicine services as the ones offered by the Plaintiff, their control of the medical board nevertheless triggers the requirement for active state supervision.

37.     This is because the physicians are licensed, and their services regulated by, the Texas Medical Board. At all the times the State of Texas does not have direct supervision over the action of the Board members.

38.    Active market participants, as the physician members of the Board, need not constitute a numerical majority of the members of a state regulatory board in order to trigger the requirement of active supervision.

40.    A decision that is controlled, either as a matter of law, procedure, or fact, by active participants in the regulated market (*e.g.*, through veto power, tradition, or practice) must be actively supervised to be eligible for the state action defense. That is the case of the Texas Medical Board.

41.    Neither the Board nor the individual past and present members of the Board have state immunity to this action because the State of Texas did not provide for any mechanism of active supervision of the Board's and Board members' decisions and activities.

42.    The challenged restraint of trade, is the defendants' proposed perpetual restriction of Plaintiff's professional medical license by restricting the manner in which the Plaintiff provides CAM and integrative medicine services.

43.    The proposed restraint of trade is not clearly articulated nor affirmatively expressed as a state policy either by statute, regulation or anything else. The state of Texas did not foresee or implicitly endorse the anti-competitive effect of the state agencies' and state agents' actions.

44.    The proposed restraints of trade sought to be imposed by the defendants are not actively supervised by a state agency or a state official that is not a participant in the market that is being regulated.

45.    In fact, the Board and its market participant members are the only entities and individuals who are empowered to maintain in place the restraints of trade which are the subject matter of this litigation.

8

46.     The state of Texas does not have in place any independent supervision scheme or mechanism which oversees the actions of the Board and Board members.

47.     There is no existing supervisor who must review the substance of the anticompetitive decision of the Board; there is no supervisor who or which must have the power to veto or modify decisions of the Board to ensure that they accord with state policy; the mere potential for state supervision is not an adequate substitute for a decision by the State.

48.     Consequently, the judicial appeals process of the Texas Administrative Procedure Act ("APA") is not a substitute for immediate state supervision of the Board's acts.

49.     A regulatory board, such as the Board in this case, cannot issue determinations, or proceed in a manner which restricts the type of medical services rendered to patients seeking CAM and integrative medicine care by promoting the financial interest of one group of physicians over the other.

50.     The defendants cannot proceed against the Plaintiff in the interest of promoting the personal financial interests of the Board members. Such conduct is not protected under the "state action" immunity against the present antitrust claim.

51.     In the context of license disciplinary proceedings, active supervision by the state may be provided by the administrator who oversees the regulatory board (*e.g.*, the secretary of health), the state attorney general, or another state official who is not an active market participant.

52.     The active supervision requirement of the state action defense would be satisfied if the supervisor: (i) reviews the evidentiary record created by the regulatory board; (ii) supplements this evidentiary record if and as appropriate; (iii) undertakes a de novo review of the substantive merits of the proposed disciplinary action, assessing whether the proposed disciplinary action comports with the policies and standards established by the state legislature; and (iv) issues a

written decision that approves, modifies, or disapproves the disciplinary action proposed by the regulatory board.

53.     No state supervision protocols over the actions of the Board and its members as articulated hereinabove exists or ever existed in the State of Texas.

54.     A disciplinary action which seeks to restrict the medical services provided by an entire segment of the medical providers in Texas who provide complementary and alternative medicine services significantly impacts market competition.


### III.     IDENTITY OF THE PARTIES

**The Plaintiff.**

55.     At all the relevant times, hereinabove and hereinafter mentioned the Plaintiff is a physician duly authorized and licensed to practice medicine in the state of Texas and he maintains a principal business address c/o/ The Houston Wellness Clinic 550 Post Oak Blvd., Suite #330 Houston, TX 77027.

**The defendants**:

56.      At all the relevant times, hereinabove and hereinafter mentioned the Board was and still is an agency of the State of Texas existing and doing business under the laws of the state of Texas. The Board's main place of business is 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

57.     The Board's business is conducted by 19 statutory members, 12 of whom are licensed physicians. Relevant to this antitrust complaint is the fact that the Board is controlled by a majority of health care practitioner market participants.

58.     The defendant Michael Arambula, M.D., Pharm.D. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. The Board's main place of business is 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

59.     The defendant Manuel Guajardo M.D. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

60.     The defendant John Guerra, D.O. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

61.     The defendant Scott Holiday, D.O. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

62.     The defendant Margaret McNeese M.D. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market

11

participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

63.     The defendant Allan Shulkin M.D.is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

64.     The Defendant Robert D. Simonson, D.O. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

65.     The defendant Wayne M. Snoots M.D. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

66.     The defendant Karl Swann M.D. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices

medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

67.     The defendant Surendra K. Varma M.D. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

68.     The defendant Stanley Wang M.D. is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine in the state of Texas. Medicine is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

69.     The defendant George Willeford III is and at all the relevant times hereinabove and hereinafter mentioned was a voting member of the Board. Said defendant is a market participant for the purposes of this antitrust litigation because he is licensed by the Board and he practices medicine, which is the profession which the Board licenses. Defendant's main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

70.     The defendants Julie K. Attebury, David Baucom, Frank Denton, John Ellis, Jr., J.D. Carlos L. Gallardo and Paulette Barker Southard respectively are and at all the relevant times hereinabove and hereinafter mentioned were voting members of the Board and members of the public appointed to the Board pursuant to Texas Occ. Code Sec. 152.002. These individuals are made party defendants to this action because they conspired and continue to conspire with each

other and with the physician market participant defendants to violate 15 USC Sec. 1 et.seq.

Defendants' main address is c/o the Board at 333 Guadalupe Tower 3, Suite 610 Austin, TX 78701.

## IV.    JURISDCION AND VENUE

71.    This Court has exclusive subject matter jurisdiction to adjudicate Plaintiff's Sherman Antitrust claims pursuant to 28 USC Sec. 1337, 28 USC Sec. 1331. Jurisdiction is also properly vested in this Court pursuant to 15 USC Sec. 4 and 15 USC Sec. 26.

72.    This Court has subject matter jurisdiction to adjudicate Plaintiff's Clayton Antitrust Act prayer for relief under 15 USC Secs. 15 and 15 USC Sec. 26 pursuant to 28 USC Sec. 1337, 28 USC Sec. 1331 because the legal questions alleged in this complaint arise under the statutes of the United States of America and under an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

73.    This Court has subject matter jurisdiction to adjudicate Plaintiff's constitutional claims under 42 USC Sec. 1983 under the provisions of 28 USC Sec. 1331.

74.    Venue is properly based in the Western District of Texas pursuant to 28 USC Sec. because the defendants maintain their principal place of business within the territorial venue of this Court at 33 Guadalupe, Tower 3, Suite 610, Austin, TX 78701 and a substantial part of the facts giving raise to plaintiff's claims occurred within the territorial venue of the Western District of Texas.

## V. RELEVANT MARKETS

75.    The following are the relevant product markets which pertain to this complaint:

**(a).    Physician services market and the sub market of medical
services of CAM and integrative medicine.**

76.    The Plaintiff competes with other office and hospital based physicians, including the physician members of the Board, in providing competitive medical services including services of CAM and integrative medicine to patients who seek them.

77.    The Plaintiff specifically provides CAM and integrative medicine services in that specific submarket as more particularly allowed and sanctioned by the Texas Medical Board and the defendants under 22 TAC Part 200.

78.    In Texas, the CAM and integrative medical services is a recognized submarket of general medical services by the medical community and by the  defendants  through  their  own enactment of 22 TAC Secs. 200.1 through 22 TAC Sec. 200.3.

79.    The medical services product market has reasonable interchangeability of use or the cross-elasticity of demand between the product itself.

80.    Namely the CAM and integrative medicine services offered by the Plaintiff and the substitutes for it, which are the general allopathic services offered by physicians such as the defendant physicians themselves are the interchangeable products.

81.    The relevant general medical services market includes a group of sellers or producers, in this case allopathic physicians sitting on the Board and allopathic physicians who are not members of the Board, who have actual and potential ability to deprive the Plaintiff and the group of physicians offering CAM and integrated medicine services of patient business.

82.    The relevant patient business segment is that of patients who seek the type of sub market services offered by the Plaintiff and others who similar services.

83.     Several "practical indicia" of an economically distinct submarket are identified by relevant principles of law as follows: industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.

84.     The alleged submarket of CAM and integrative medical services offered to the public by the Plaintiff and other physicians in Texas is economically distinct from the general product market of allopathic medical services for the following reasons:

(i).     the submarket is recognized both by patients and by the defendants themselves as a separate submarket of medical services and a separate entity. See 22 TAC Part 200;

(ii).     the CAM and integrative medicine services have peculiar characteristics because they do not rely exclusively on conventional or pharmaceutical drug treatments and approaches to any certain illness or malady but use other approaches which dispense or lessen the use of chemical medication;

(iii).     patients seeking CAM and integrative medicine services do not rely on insurance coverage but must pay out of pocket because insurance plans typically do not cover such services;

(iv).     the type of patients seeking complementary and alternative medicine treatments is different and more educated and sophisticated than the patients seeking strictly allopathic treatment.

85.     The defendants hold market power because they can control the medical services market by simply eliminating CAM and integrative medicine services through the use and under the cover and disguise of the Texas disciplinary statutes.

86.    The defendants also hold market power because they have a dominant market share of the medical services. That dominant share is the general allopathic medicine services

   (b).    **The Geographic Market.**

87.    The relevant geographic market is Texas. To practice medicine in Texas and to provide medical services, one must possess a valid un restricted medical license issued by the Board and sanctioned by the defendants.

88.    Defendants' action sought to be taken against the Plaintiff seeks to restrict and limit competitive medical service alternatives for patients in Texas and for patients from outside of Texas who are seeking to receive CAM and integrative medicine services in Texas.

## VI.    FACTUAL BACKGROUND RELATED TO ANTITRUST VIOLATION CLAIMS.

89.    The defendants conspired and continue to conspire with each other to violate 15 USC Sec. 1 by engaging in horizontal restraint of trade, horizontal market allocation, price fixing and unreasonable restraint of trade through the attempted exclusion of CAM and integrative medical services in Texas.

90.    The defendants conspired and continue to conspire with each other to violate 15 USC Sec. 2 by attempting to create a monopoly of allopathic medicine services provided by office and hospital physicians to the exclusion of CAM and integrative medicine services.

(a).    **In general - the defendants used and continue to use their official positions and the disguise and cover of the Texas complaint process, the investigative process and the ISC and the license disciplinary process in furtherance of their conspiracy to violate 15 USC Secs. 1 and 2.**

91.    In furtherance of their conspiracy to violate 15 USC Sec. 1, the defendants availed themselves of their official positions. They misused and continue to misuse the provisions of the

complaint process, the medical investigative process, the ISC process and the formal disciplinary process governed by the Texas Occupations Code and by the Board's own regulations.

92.     In Texas, the stages preceding the filing of a formal complaint at State Office of Administrative Hearings ("SOAH") are governed by various pre-requisite predicate provisions of the Texas Occupations Code and of the Board's regulations.

93.     Those procedural predicate stages are the complaint handling stage, the investigative stage and the Informal Show Compliance Conference ("ISC") stage. These stages are explained below.

94.     Under Texas law, the defendants are not authorized to use the formal disciplinary process to legitimize their conspiracy to violate the Sherman Antitrust Act. Furthermore, the defendants cannot commence formal proceedings without first staging the same at the complaint investigation and ISC stages.

95.     Prior to the commencement of a formal disciplinary process at SOAH, and upon receipt of a complaint from members of the public, the Board is obligated to relay to the physician the summary of the allegations of the complaint and afford the licensee an opportunity to respond. If the complainant signs a waiver, the entire complaint must be made available to the licensee.

96.     Either way a licensee is given an opportunity to submit a response to complaint allegations. See Tex. Occ. Code Secs. 154.051 through Sec. 154.056. See Board rules 22 TAC Chapter 178.

97.     The materials, medical records and responses obtained from the licensee during the response are then submitted for review to expert panelists. These individuals are consultants for the defendants regarding the issues raised in the investigated complaint. See Tex. Occ. Code 154.056 - Sec. 154.0561 and 22 TAC Sec. 182.4 through 22 TAC Sec. 182.8.

98.    To ensure that the medical reviews by the consultants are relevant to the specific medical issues raised in the complaint and are further relevant to the conduct pertaining to each investigated licensee, the defendants themselves enacted 22 TAC Sec. 182.8.

99.    22 TAC 182.8(a)(1) provides that the "[r]eviewers shall be randomly selected from among those Expert Panel members who practice **in the same specialty as the physician who is the subject of the complaint. The practice area or specialty declared by the subject physician as his area of practice may be the specialty of the expert reviewers.**

100.    Under the provisions of their own rule, the defendants are not authorized to select reviewers who are not familiar with Plaintiff's declared practice area which is CAM and integrative medicine.

101.    In this case, the Plaintiff specifically designated his area of expertise as CAM and integrative medicine. The practice of the foregoing type of medicine and the offer of the foregoing medical services are authorized by law in Texas 22 TAC Part 200.

102.    Without exception, to further and legitimize their conspiracy to violate 15 USC Sec. 1 and 15 USC Sec. 2, and for the purported purpose of reviewing the complaint allegations vis a vis Plaintiff's responses and medical records, the defendants selected allopathic medicine reviewers and not CAM or integrative medicine reviewers. The reviewers' background and qualifications were not in Plaintiff's area of expertise.

103.    Defendants' conscious selection of unqualified "expert panelists" was calculated to produce false reports on issues related to CAM and integrative medicine services. This selection was also calculated to facilitate the staging of the ISC and of the commencement of the SOAH formal disciplinary process. This conduct also violated defendants' own regulation 22 TAC 182.8(a)(1).

104.    Because of their lack of practice, training, familiarity or expertise in CAM and integrative medicine, the so called "expert" consultants fabricated and produced reports which did not address the specific CAM and integrative medicine protocols used by the Plaintiff within the context of that specialty.

105.    Rather the experts applied allopathic medicine paradigms to their review and repudiated CAM and integrated medicine in their totality.   of defendants' conspiracy to violate the Sherman Antitrust Act.

106.    The purported repudiation of CAM services contained in the bogus reports were in turn illegitimately used by the defendants to stage the ISCs and further the bad faith prosecution as set forth in this complaint.

107.    Defendants' selection of allopathic physicians as so called "expert panelists" and their use of such knowingly unqualified physicians to create reports which repudiate CAM and integrative medicine services in their entirety, was defendants' first step in furthering their conspiracy to restrict the practice and services of CAM and integrative medicine.

108.    The fabrication and the creation of the flawed expert panel reports which repudiate CAM and integrative medicine in their entirety was a needed predicate procedural step in defendants' facilitation of the next step of the conspiracy to violate the antitrust statutes. That next step is the ISC process.

109.    The offering of an ISC is a mandatory pre-requisite constitutional due process step to the commencement of the formal disciplinary process. Tex. Govt. Code 2001.054(c)(2). This process was hijacked by the defendants and used towards their conspiracy to violate the Sherman Antitrust Act.

110.    Due process mandates in Texas that preceding the scheduling of the ISC the defendants must give notice to the Plaintiff of the conduct alleged to warrant the intended disciplinary action and offer the Plaintiff and opportunity to respond to such conduct. Tex. Govt. Code 2001.054(c)(1) and 22 TAC Sec. 22 TAC Sec. 187.16.

111.    The ISC information package must include the so called "expert" panel report which identifies the conduct in question 22 TAC 187.16(a)(3). Thus, without a fabricated report which outright rejects the CAM protocols and services offered by the Plaintiff to the public, the defendants cannot render legitimacy to their conspiracy to violate 15 USC Sec. 1 and Sec. 2 and convoke the ISC.

112.    The defendants misused the foregoing procedural stages to further their conspiracy to violate the Sherman Antitrust Act as set forth below.

**(b).    Plaintiff's practice of medicine and his specific patients.**

113.    Per defendants' own expert panel report dated 2/25/2016, which was written and generated by defendants' selected physicians, the Defendants acknowledged that the Plaintiff describes his medical practice exclusively as "Integrative Medicine".

112.    At all the relevant times hereinabove and hereinafter mentioned, the plaintiff provided and still provides competitive medical services in the medical submarket of complementary, alternative and integrative medicine which is recognized by the defendants themselves under 22 TAC Part 200.

114.    The Plaintiff has a specialized practice seeing 25-30 patients a week. All patients pay cash and the Plaintiff does not take any insurance plans which do not cover CAM and integrative medicine services.

115.    Plaintiff's patients are a cross section of educated individuals who seek treatments in addition to or to the exclusion of allopathic medicine approaches employed by allopathic physicians.

(c)    **The Defendants used the bogus expert panel reports
And the ISC process in furtherance of their conspiracy
to violate the Sherman Antitrust Act.**

116.    To render legitimacy to their conspiracy to violate 15 USC Sec. 1 and 15 USC Sec. 2, the defendants spun off three separate ISCs noted at different times during 2016.

117.    All three ISCs were based upon so called "expert panel reports" generated by reviewers who admittedly were unqualified in specialty area of integrative medicine or CAM.

118.    The so called "expert reviewers" were specifically selected by the defendants for the purposes of giving the appearance of legitimacy to the repudiation of CAM and any other competitive integrative medicine services offered by the Plaintiff.

119.    Notwithstanding this selection in an effort to facilitate defendants' conspiracy, even the allopathic reviewers uniformly agreed that on issues that did not pertain to CAM and integrative medicine, the Plaintiff did not violate Texas law or the applicable standard of care.

120.    The reviewers also uniformly found that most of the allegations contained in the complaints of the two individuals who were furthering an extortionist scheme, could not be substantiated from the fact of the medical records or from any other source.

121.    Defendant's misuse of the information contained in the reports as well as their own bad faith fabrication of issues which went well beyond the scope of the complaints are discussed below.

#### (i).       The ISC regarding the complaint of Mrs. MDR.

122.    Prior to filing complaints with the Board, in an email addressed to the Plaintiff under patient MDR's assumed name, Mrs. MDR demanded in writing that the Plaintiff pay her $300,000.00 in exchange for her forgoing the filing of complaints with the Board against the Plaintiff.

123.    She also threatened to file complaints with the District Attorney and to proceed to defame the Plaintiff and his medical practice in public forums if the foregoing payment was not made.

124.    When the Plaintiff refused to pay the ransom demanded by Mrs. MDR, in furtherance of her stated extortionist scheme, she did the following things: (1) she spun off two separate complaints with the Board; (2) with the consent and knowledge of the patient, she posted defamatory statements on her Facebook account which related to the public confidential information about the medical services offered by the Plaintiff to patient MDR; (3) she enlisted the help and cooperation of her close friend and confidant, patient RM to file a separate complaint with the Board against the Plaintiff in furtherance of the extortionist scheme.

125.    The motives behind Mrs. MDR's complaints as well as her email stating her intentions, were made known to the defendants. A copy of the communications demanding the ransom money and then announcing Mrs. MDR's intent to file the complaints with the Board was provided to the defendants before the ISC took place.

126.    Mrs. MDR spun off two separate complaints. In one she complained that the Plaintiff breached confidentiality by writing an email to a common friend (patient RM and her husband) in response to the Facebook defamatory statement posted by Mrs. MDR. In the

defamatory post, Mrs. MDR disclosed to the public confidential information pertaining to the medical services rendered to patient MDR (Mrs. MDR's husband) by the Plaintiff.

127.     In the other complaint, Mrs. MDR included allegations criticizing the CAM and integrative medicine services which the Plaintiff gave to patient MDR. She also complained about many other non-CAM related issues which were found by the expert panelists to be unsubstantiated.

128.     In response to the first complaint, the Plaintiff showed the defendants Mrs. MDR's post in which she defamed the Plaintiff and his CAM medical services and in which she encouraged others to also defame the Plaintiff as well.

129.     The Plaintiff also showed the defendants that in the post Mrs. MDR disclosed specific confidential allegations regarding Plaintiff's treatment of patient MDR and MDR's medical condition.

130.     Because Mrs. MDR was present during all her husband's medical appointments with the Plaintiff, and because she was the main conduit of communications between the Plaintiff and patient MDR due to a language barrier, Mrs. MDR acted as patient MDR's agent when she waived confidentiality through her public post as alleged above.

131.     The Plaintiff has shown the defendants that what Mrs. MDR was complaining about was in fact a private email sent by Plaintiff to Mrs. MDR's friend, patient RM, which was neither made public nor posted anywhere in the public domain.

132.     In that email the Plaintiff neither discussed nor disclosed any confidential information which was not already made public by Mrs. MDR. He simply repudiated the defamatory post.

133.    The allopathic "expert panelists" themselves found that a variety of issues in Mrs. MDR's complaints which did not pertain to CAM and integrative medicine were unsupported by anything available to the reviewers.

134.    Then, the allopathic "expert panelist" addressed in the report the CAM and integrative medicine services provided by the Plaintiff to patient. They repudiated and dismissed such services in their entirety even though they had no training practice or regulatory qualifications to opine on such issues.

135.    Then in bad faith, the expert panelists opined that the email responding to the public Facebook defamatory post was a violation of MDR's patient confidentiality rights. This statement was made with knowledge that Plaintiff's email discussed matters which were already made public about patient MDR by Mrs. MDR in her Facebook post.

136.    In his ISC response, the Plaintiff objected to the expert panel report's inclusion of CAM and integrative medicine criticisms because of the lack of regulatory and statutory qualifications of the panelists to opine about such issues.

137.    The ISC panel agreed with the Plaintiff and found that because the expert reviewers were unqualified to opine on CAM and integrative medicine services, the Plaintiff did not violate any Texas law by offering such services to patient MDR.

138.    Much of Mrs. MDR's complaint allegations were also not considered by the ISC panel because they were found to be unsubstantiated by the "expert panelists" themselves.

139.    The ISC panel then found that Plaintiff's email addressing the Facebook post was a breach of patient confidentiality.

140.    The defendants had the option to dismiss Mrs. MDR's complaints once they learned that they were filed in furtherance of a criminally extortionist scheme. See 22 TAC Sec. 178.7(6).

142.    The defendants also had the option to dismiss Mrs. MDR's complaints once they learned from their own expert panelists that a majority of the issues raised in the complaints were unsubstantiated. See 22 TAC Sec. 178.7(6).

143.    The defendants also had the option to dismiss Mrs. MDR's complaints once the ISC panel found that the Plaintiff did not violate any Board regulation or any provision of the Texas Medical Practice Act for providing CAM and integrative medicine services to patient MDR. See 22 TAC Sec. 178.7(6).

144.    If indeed the ISC panel's breach of confidentiality finding regarding Plaintiff's email was legitimate and not a staging of a bad faith prosecution and if indeed the defendants did not act in furtherance of their conspiracy to violate the antitrust statutes, they had the option to offer the Plaintiff a remedial non-disciplinary settlement under Tex. Occ. Code Sec. 164.0015.

145.    Under the foregoing statute, a remedial settlement offer is not disciplinary in nature. The defendants are authorized to enter into such a non-disciplinary settlement when the conduct in question is not a violation of the applicable medical standard of care. Here, no violations of the medical standard of care were found to exist.

146.    Rather than availing themselves of the forgoing options, the defendants conspired with each other to use the complaint handling process, the investigative process and the ISC process to stage a bad faith formal license prosecution.

147.    The defendants used the extortionist and illegitimate complaints of Mrs. MDR to justify the staging of the ISC and of the formal disciplinary process in furtherance of their conspiracy to violate the Sherman Antitrust Act.

148.    The defendants went so far as to actively participate in Mrs. MDR's documented extortionist scheme by legitimizing the same through their own actions.

149.    The following factors should have been sufficient grounds for the defendants to simply dismiss the complaint pursuant to 22 TAC Sec. 178.7(6): (a) the finding by the ISC panel that no violation of Texas law took place with respect to the CAM and integrative medical services offered by the Plaintiff; (b) the finding by the allopathic reviewers, as stated in the expert report, that many of the complaint allegations were unsubstantiated; (c) defendants' acute awareness of complainant's documented extortionist motives,

150.    The defendants had another agenda. That is the violation of the Sherman Antitrust Act and the exclusion of CAM and integrative medicine from the medical services roster of Texas physicians.

151.    In furtherance of their conspiracy to violate the Sherman Antitrust Act and to stage a bad faith prosecution, rather than dismissing the complaint, the defendants chose to recommend formal prosecutions of the Plaintiff.

152.    This recommendation was made based upon no viable grounds and for no other reasons than seeking to restrict his CAM and integrative medicine practice and to harass him for the same.

### (ii)    The complaint and ISC regarding patient RM.

153.    Patient RM was a close friend of extortionist complainant Mrs. MDR. The Plaintiff met both in the local restaurant of Mrs. MDR in Cabo St Lucas Mexico where he has a vacation home.

154.    At the same time when Mrs. MDR furthered her extortionist scheme as set forth above, she approached patient RM and convinced her to join her to concoct a complaint and file it with the defendants to further Mrs. MDR's extortionist scheme.

155.    Patient RM concocted and filed her complaint with the defendants on or about the same time when Mrs. MDR staged her extortionist scheme and filed the above complaints against the plaintiff.

156.    The sum and substance of RM's complaint was almost identical to the one filed by Mrs. MDR.

157.    The complaint first alleged breach of confidentiality. That issue was rejected by defendants' own expert panel report as unsubstantiated. RM's complaint also alleged the use of CAM and integrative medicine treatments which RM sought, consented to in writing and accepted from the plaintiff.

158.    The later issue was in fact adopted for review by defendants' allopathic medicine expert reviewers.

159.    Such by the unqualified allopathic reviewers served no other purpose than to outright reject the use of CAM and integrative medicine services in their entirety and to further defendants' conspiracy to violate the Sherman Antitrust act.

160.    The Plaintiff advised the defendants that RM's complaint was filed as part and in furtherance of the extortionist scheme of Mrs. MDR. The defendants simply chose to ignore and failed to investigate this information. Instead, they chose to encourage the extortionist scheme and to use RM's complaint as a pretext to further their conspiracy to violate 15 USC Secs. 1 and 15 USC sec. 2.

161.    To further intimidate the Plaintiff and for the purposes of making him expend significant fees, for no apparent reason the defendants chose to space out the ISCs for the two complaints rather than group them together.

162.    On June 13, 2016, the defendants scheduled an ISC regarding the matter of patient RM for September 19, 2016.

163.    Akin to the case of patient MDR, the main subject of this ISC was Plaintiff's treatment of patient RM with CAM and integrative medicine approaches to which RM consented and sought in the first place.

164.    Like in the case of patient MDR, the defendants once again selected expert panelist reviewers who had no background, experience or practice with In CAM and integrative medicine and who repudiated such practices outright.

165.    The defendants, through the so called "experts" who did not meet the qualifications of 22 TAC Sec. 182.8, again generated a bogus report repudiating CAM and integrative medical services. The Plaintiff again objected to this statutory and regulatory violation.

166.    At the staged ISC held on September 13, 2016, the defendants convoked a panel which was composed from a plastic surgeon and a lay person.

167.    The plastic surgeon member was not a member of the Board. He was the same physician member of the ISC panel which determined the issues in Mrs. MDR's complaint.  The lay person was a member of the Board.

168.    The panel which heard the issues in Mrs. MDR's complaints decided that the Plaintiff's use of CAM and integrative medical services did not violate Texas law.

169.    In stark contrast to their prior finding in the case of MDR, the ISC panel in the RM case concluded that the unqualified expert's suggestion that CAM and integrative medicine services should be repudiated must be sustained.

170.    They recommended that the Board should prosecute the Plaintiff in formal proceedings filed at SOAH for the use of CAM and integrative medicine services.

171.    This finding in effect rubber stamped and compounded defendants' conduct aimed at violating the Sherman Antitrust Act as set forth in this complaint. It facilitated the next step in the process of restricting the competitive medical services offered by the Plaintiff. That   was   the staged bad faith formal prosecution of the Plaintiff.

172.    Of major significance in the case of the ISC pertaining to patient RM is the fact that admittedly neither the ISC panel nor the expert panel reviewers possessed any training, knowledge or expertise in the CAM and integrative medicine field.

173.    Unlike the provisions of 22 TAC 182.8, there is no statutory or regulatory provision mandating that the ISC members possess the same training or practice expertise in the licensee's own field of practice of medicine.

174.    In a case where the members of the ISC panel do not have CAM and integrative medicine training and they rely on the expert panel's expertise and report to make recommendations or determinations regarding the merits of medical issues, the need for the expert panelists' specific CAM and integrative medicine qualifications pursuant to 22 TAC 182.8, is even more acute than in any other cases involving allopathic medicine issues.

175.    Defendant's selection of both the expert panelists and of the ISC members who did not possess qualifications to hear and decide CAM and integrative medicine issues underscore the conspiracy to violate the Sherman Antitrust Act and the bad faith staging of the formal disciplinary process.

176.    For all the foregoing reasons, the inescapable conclusion is that the defendants manipulated and used the Texas procedural investigative and complaint resolution process to further their conspiracy to violate the Sherman Antitrust Act in the complaint regarding patient RM.

(iii)     **The complaint and ISC related to patient MV.**

177.     Individual MH, is a discharged employee of the Plaintiff who was employed between 11/9/2015 through 3/4/2016 in her capacity as office manager in Plaintiff's clinic. She was discharged for cause. After discharging her but before her final departure, the Plaintiff allowed MH to stay on for two additional paid weeks while she searched for a job.

178.     During the last two week stay, MH removed medical records from Plaintiff's office, obtained in an unauthorized fashion confidential medical record information pertaining to at least five patients and threatened the plaintiff in an open email with retaliatory action for her discharge.

179.     MH then filed complaints with respect to five different patients MV, RK, RG, EM and EL alleging a variety of specific isolated medical issues related to each one of the patients.

180.     For her malicious libel, the Plaintiff sued MH for defamation and that complaint is now pending in Harris County for default judgement.

181.     While the libel law suit is not part of this action, relevant to these allegations is the fact that the defendants were made aware of the source and motives of the MH complaints and yet, they did use MH's complaints as a pretext for the further facilitation of their conspiracy to violate the Sherman Antitrust Act and to stage a bad faith prosecution.

182.     The defendants issued initiating letters to the plaintiff identifying the specific issues purportedly alleged in the serial complaints filed by MH.

183.     The Plaintiff answered each issue with respect to each one of the patients.

184.     Without exception, in each one of the five complaints, the defendants then issued administrative subpoenas seeking complete medical records from the plaintiff regarding all five patients.

185.    The medical records sought in the subpoenas did not pertain strictly to the issues identified by the defendants as being under investigation.

187.    In the case of patient MV, the defendant produced the entire record of the patient.

188.    However, after this complete record production, the Plaintiff realized that the defendants' request for complete medical records for each one of the identified patients did not relate to the issues under investigation.

189.    The Plaintiff further realized that the defendants were furthering their conspiracy to violate the Sherman Antitrust Act by seeking to go on an unrelated fishing expedition beyond the issues articulated in MH's complaints.  This was beyond their investigative powers.

190.    The Plaintiff also realized that in furtherance of their conspiracy to violate the Sherman Antitrust Act, the defendants would once again submit the complete medical records of the patients in question to the same unqualified reviewers to obtain reports which sought to eliminate alternative and CAM medicine treatments.

191.    Consequently, with respect to defendants' inquiries regarding each of the patients in MH's complaint, the Plaintiff responded to the specific issues of the complaint identified in defendants' initiating letters. He submitted specific parts of the medical records which addressed the specific issues identified as being under investigation. Plaintiff then objected to the subpoenas issued for patients RK, RG, EM and EL on constitutional and relevancy grounds.

192.    The Plaintiff then commenced two separate actions in Travis County District Court to have the legitimacy and scope of the subpoenas judicially adjudicated.

193.    Those actions and issues related to the subpoenas are now pending before the Travis County District Court and are scheduled for a hearing on April 4, 2016 in the cases titled *Allibone v. Robinson et.al.* Docket Nos. D-1-GN-16-002967 and D-1-GN-16-002970.

194.    The subject matter of defendants' conduct related to the subpoenas is not before this Court. However, defendant's conduct related to the same was part of defendants' attempt to further facilitate the violation of the Sherman Antitrust Act through the fabrication of prosecution grounds which are unrelated to the issues under investigation.

195.    It was an attempt at obtaining additional medical chart information to fabricate grounds for prosecution which were beyond the scope of the issues identified in the complaint of MH.

196.    The Plaintiff did produce the entire medical record for patient MV. The complaint regarding that patient did not involve any CAM or integrative medicine issues. It involved principles of allopathic medicine and the single issue of the handling of a peripherally inserted central catheter ("PICC") by the Plaintiff and by the specialist who placed the PICC in patient MV.

197.    The defendants selected allopathic expert panel reviewers to review the PICC line issue as well as MV's entire medical chart which contained CAM and integrative medicine treatment modalities.

198.    While the selection of allopathic physicians in the examination of the PICC line issue was appropriate, those panelists possessed no qualification, experience, practice or knowledge of CAM and alternative medicine concepts necessary to review the rest of the MV chart beyond the scope of the initial complaint.

199.    The expert panel reviewers concluded that the Plaintiff appropriately handled the PICC line issue and that the same was in fact the problem of the PICC line specialist who also handled this issue appropriately.

200.    Upon defendant's experts' finding that the single issue pertaining to patient MV, which was the handling of the PICC line by the Plaintiff, did not violate the medical standard of

care, the defendants should have simply dismissed the complaint without any further action. See 22 TAC Sec. 178.7(c).

201.    That is not what they did.  Rather, to render credence and legitimacy to their conspiracy to violate the Sherman Antitrust Act, the entire medical record of patient MV was forwarded to the allopathic medicine reviewers with instructions to generate a report repudiating Plaintiff's CAM and integrative medicine services in their entirety.

202.    The allopathic "experts" complied. They issued a report taking aim at Plaintiff's provision of CAM and integrative medicine services repudiating the same. At the same time the so called "expert reviewers" fabricated issues which were either contradicted by or could not be discerned from the face of the entries of the medical record.

203.    The defendants then scheduled an ISC about patient MV on December 12, 2016.

204.    At the ISC, the Plaintiff and his counsel stated to the panel that the ISC was outside the scope of the subject matter jurisdiction of the Board because it addressed matters beyond the ones identified in the initial complaint.

205.    The plaintiff and his counsel informed the ISC panel that the initial matters of the complaint regarding patient MV with respect to the PICC line were cleared by the allopathic experts and were found to constitute no statutory or regulatory violation.

206.    The Plaintiff asked the panel to dismiss the accusations against him and to exonerate him. This request was predicated on defendants' experts' own findings outlined above.

207.    The Plaintiff further explained that issues of CAM and integrative medicine were not part of the initial complaint and that the defendants were improperly staging the ISC for purposes other than addressing the initial complaint.

208.    In what appears to be a complete understanding of her role as a co-conspirator and as facilitator of the conspiracy to violate the antitrust statutes, the public member of the ISC panel faithfully executed her part. Defendant Paulette Southard shook her head negatively in a summary dismissal of Plaintiff's counsel's statements and demand for dismissal in the absence of a finding of any violations with respect to the initial complaint allegations.

210.    In furtherance of defendants' continued conspiracy to violate the Sherman Antitrust Act and for the purposes of furthering their scheme to do the same, the ISC panel found that the issues highlighted in the expert panel report which pertained to the repudiation of CAM and integrative medicine services should be referred out for prosecution at SOAH.

## VII. THE ANTICOMPETITVE CONDUCT

211.    The defendants were repeatedly made aware that the plaintiff practices exclusively CAM and integrative medicine.

212.    The offering of competitive medical services in the submarket of CAM and integrative medicine services is specifically allowed by the defendants under 22 TAC Sec. 200.

213.    Notwithstanding this regulation, the defendants continue to take aim at the plaintiff and at other CAM medicine physicians in Texas in a concerted attempt to: (a) create a monopoly for allopathic medical services; (b) control the prices of such services in accordance with insurance prescribed rates; (c) horizontally reallocate market share of patients to themselves and like physicians who do not practice CAM medicine; (d) eliminate CAM medicine altogether.

214.    In the past ten years alone the defendants targeted and continues to target a large segment of the CAM and integrative medicine community in Texas in an effort to restrict the competitive medical service offered by such physicians in Texas.

215.   In the present case, the defendants stopped at nothing to further and stage their conspiracy to unreasonably restrict Plaintiff's competitive medical services and to disguise their conduct in the mantle of legitimacy. Their actions also stopped at nothing in their effort to stage a bad faith license prosecution against the Plaintiff.

216.   Instead of outright dismissing Mrs. MDR's complaints the defendants furthered and encouraged Mrs. MDR's documented extortionist scheme and that of her cohort, patient RM.

217.   The defendants made use of the illegitimate complaints as a pretext to further their own conspiracy to violate 15 USC Secs. 1 and 15 USC Sec. 2.

218.   In fact, the upholding of any issues contained in any type of a complaint filed with the defendants by Mrs. MDR or by anyone else in furtherance of a documented extortionist scheme amounts to bad faith and to an act in furtherance of defendants' conspiracy to violate the Sherman Antitrust Act.

219.   In furtherance of their conspiracy to violate the Sherman Antitrust Act, the defendants fabricated claims that integrative and CAM medicine treatments should never be used at all. The ISC panel in the Mrs. MDR rejected that view at first.

220.   That initial rejection did not deter the defendants from pressing forward with their conspiracy to violate the antitrust statutes.   The defendants continued the stage fabrication of "expert panel reports".

221.   Those reports were authored by carefully selected so called "experts" who neither practice CAM of integrative medicine nor have any training in this field. Rather they outright reject such competitive services in their totality.

220.   With respect to the complaint received from patient RM, who is Mrs. MDR's friend and co-conspirator in the furtherance of the extortionist scheme stated above, the defendants

similarly had the option to dismiss the complaint as part of Mrs. MDR's continued scheme to extort money from the Plaintiff.

221.   Far from considering dismissal, and in furtherance of their conspiracy to violate the antitrust statutes and to stage a bad faith license prosecution, the defendants reversed course from their initial findings in the ISC regarding Mrs. MDR's complaint.  They decidedly concluded that CAM and integrative medicine services are not acceptable at all.

222.   In the third case the defendants opted not to dismiss the complaint of discharged employee MH regarding patient MV. The refusal to dismiss the complaint came even after a finding by defendants' own allopathic expert reviewers that there was no violation of Texas law in the handling of the PICC issue.

223.   Instead, the defendants used the very same allopathic physicians who found no fault with plaintiff's handling of the PICC line to fabricate grounds for prosecution aimed by enlarge at the provision of CAM and complementary services in general.

224.   Defendants' conduct as specified above is designed to legitimize their conspiracy to restrict Plaintiff's CAM and integrative medicine services and to violate the antitrust statutes.

225.   By restricting the competitive CAM and integrative medicine services offered by the Plaintiff, the defendants are seeking to create a monopoly of their own general market allopathic medical services in violation of 15 USC Sec. 2.

226.   The defendants are also seeking to engage in horizontal market reallocation, horizontal restraint of trade, price fixing and unreasonable restraint of trade though their conduct as alleged above, in violation of 15 USC Sec. 1.

VIII.   THE ANTICOMPETITIVE EFFECTS OF DEFENDANTS'
        ACTIONS AIMED AT VIOALTING THE SHERMAN
        ANTITRUST ACT.

(a)     Restriction of competitive services and consumer choices.

227.    Defendants' anticompetitive conduct is aimed at forming a monopoly of allopathic medical services while restricting competitive CAM and integrative medical services.

228.    This conduct would have severe anticompetitive effects on interstate commerce as well as on patients, business and competitors like the Plaintiff who provide CAM and integrative medical services in Texas and to patients who come from Texas to receive such services from all over the country.

229.    Because of the proposed restrictions of trade, patients from Texas seeking competitive CAM and integrative medicine treatments will have to expend more money to travel to out of state physicians who provide similar services as the plaintiff in states where no restrictions exist.

230.    Worst off, patients will lose the choice of receiving CAM and integrative medical treatment through the Plaintiff or other similar providers.

231.    They will lose the freedom of choice in selecting CAM and integrative medicine treatments to the exclusion or complementary to paralleling allopathic medical treatments.

232.    Some patients who opt to receive CAM and integrative medicine treatments exclusively will have to forgo such treatments altogether because of their unavailability in this state.

233.    The elimination of CAM and integrative medicine treatments through ad hoc adjudication also would amount to a bypassing of the APA rule making process. It also would

amount to an unjustified departure from the Board's own regulations allowing for such services to be offered in Texas, 22 TAC Part 200.

234.    Physicians who offer CAM and integrative medicine services will have to reduce their supply of patient services when they no longer have the option to provide those services to their patients because of the restraint of trade sought to be imposed by the defendants while aiming at the restriction of Plaintiff's services.

**(b)    Horizontal restraint of trade and reallocation
of market share.**

235.    The net effect of defendants' anticompetitive conduct is horizontal restraint of trade and horizontal market reallocation.

236.    Specifically, the defendants are at the same horizontal market level as the Plaintiff with respect to market share distribution of patients who need medical services.

237.    Their proposed restraint of trade will have the net effect of depriving the Plaintiff and every physician in Texas similarly situated from patient market share and specifically from the market share of the patients who are seeking CAM and integrative medicine services.

238.    The intended effect of defendants' proposed restraint of trade is to reallocate the patient market share exclusively to the monopoly created by defendants' actions which allows only allopathic medical services to be provided to patients in Texas.

239.    The patient market share seeking CAM and integrative medicine services will be inevitably directed by defendants' actions to Plaintiff's competitors who offer exclusive allopathic medical services.

240.    Defendants' actions are also aimed at controlling market prices for medical services through their action.

241.    Allopathic medical services are traditionally reimbursed by insurance payers while CAM and integrative medical services are not. When reimbursed by payers, the rate of the services and reimbursement is capped and dictated by the insurer's service schedules given to the plan participants.

242.    Upon information and belief, the health care provider defendants themselves are participants in insurance plans. Their medical services are paid for by insurers at the rates dictated and provided by the insurers. Their anticompetitive actions are aimed at curtailing market competition and at preventing other physicians from making more profits than the defendants.

**(c)    The proposed restraint of trade aimed at CAM and integrative medical services are not reasonably necessary or narrowly tailored to any legitimate objective.**

243.    Defendants' proposed restraint of CAM and integrative medicine services has no legitimate objective in the context of the Sherman Antitrust Act.

244.    For starters, the Board acknowledges and permits the offering of CAM and integrative services under its own rules codified in 22 TAC Secs. 200.1 through 200.3.

245.    A restriction of CAM and integrative medical services through defendants' anticompetitive conduct vitiates the defendants' own regulatory scheme, amounts to an unexplained departure from defendants' own regulatory scheme and is an act which is ultra vires as a matter of law.

246.    The only effect of defendants' proposed elimination of CAM and integrative medicine services is to eliminate the competition which they themselves allowed to take place in place under the provisions of 22 TAC Part 200. Defendants' actions would have the net effect of rendering the provisions of 22 TAC Part 200 illusory at best.

40

247.    The new restraint of trade is also not reasonably necessary because physicians in Texas have been safely providing CAM and integrative medicine services to their patients, as recognized by defendant's own regulatory scheme of 22 TAC Part 200.

248.    The only beneficiaries of defendants' restraint of CAM and integrative medicine services are office and hospital based physicians who exclusively offer allopathic medicine services. That group of physicians includes the licensee defendants in this action.

249.    In short there is no legitimate purpose for defendants' proposed restriction of CAM and integrative medical services.

**(d).    The proposed restraint of trade will cause the Plaintiff irreparable harm.**

250.    If the defendants are allowed to proceed with their staged formal process to restrain CAM and integrative medicine services offered by the Plaintiff, his business which relies exclusively on providing such services will be irreparably harmed. He will be forced to go out of business and close his offices.

251.    This action is not based upon the presupposition that the defendants will be successful at SOAH in furthering their conspiracy scheme to violate the antitrust statutes.

252.    This action is predicated upon the premises that defendants' conspiracy to proceed with acts in furtherance of their conspiracy must be enjoined and stopped pursuant to 15 USC Sec. 26.

253.    Defendants' actions will cause the Plaintiff to lose substantial revenue from Texas based patients as well as from national based patients who seek Plaintiff's CAM and integrative medicine services.

254.    The bad faith filing of complaints at SOAH in furtherance of the antitrust conspiracy carries negative connotations. It places the Plaintiff in the light of an individual who

stands accused of improper medical practice simply because he offers CAM and integrative services.

255.   In turn such perceptions are aimed at destroying Plaintiff's good will with his patients and at legitimizing extortionist complaints such as the one of Mrs. MDR and her cohort patient RM.

256.   Plaintiff's employed staff as well as other CAM and integrative medicine physicians, laboratories and health care entities which do business with the plaintiff will be affected by defendants' actions as well.

257.   The revenue generated by Plaintiff's patients pay for the employees' salaries as well as for the services provided by in state and out of state health related service providers such as laboratories referred physicians and referred health care practitioners.   The absence of such revenue will curtail that business aspect of the practice.

258.   Defendants' actions in restricting the type of medical services offered by the Plaintiff's will also have a negative impact on Plaintiff's good will with existing Texas and national clients. The Plaintiff will lose all his present and future patients because he only treats patients who are seeking CAM and integrative medicine treatments.

259.   Plaintiff's losses will be irreparable because defendants' actions will damage Plaintiff's reputation for quality of care by labeling Plaintiff's CAM and integrative medical services illegal in Texas despite defendants' existing regulatory scheme of 22 TAC Part 200.

260.   Moreover, Plaintiff's losses will be difficult to calculate. CAM and integrative medicine services is an evolving cutting age field which is acceptable and accepted by an exponentially growing segment of consumers who become educated about the benefits of such medical services.

261.    Plaintiff's patients opt for CAM and integrative medicine services to the exclusion or in complement with allopathic medicine.

262.    Restricting the CAM and integrative medicine services offered by the Plaintiff will force the Plaintiff to withdraw his services from Texas and close his business.

263.    Recently, Plaintiff's business has increased five-fold in comparison to the time when he first started to offer CAM and integrative services in Texas.

264.    Disrupting Plaintiff's CAM and integrative medical services business at this juncture will cause an injury both to the Plaintiff and to the patients who seek his services that is difficult to quantify.

265.    Plaintiff's increase in business has been so great in the past two years that his past revenues have no relationship to the likely future success.  Quantifying exactly how much business the Plaintiff would have lost, but for the proposed restrictions on trade, would be difficult.

266.    Defendants' interference with market forces during a time when Plaintiff's business gathered recognition and increased good will and during a time when CAM and integrative services are actively sought by increasing ranks of patients will obstruct competition and plaintiff's growth and will limit patient's market choices of medical services.

### IX.    FACTUAL BACKROUND RELATED TO CLAIMS OF CONSTITUTIONAL VIOLATIONS IN THE STAGING OF A BAD FAITH PROSECUTION AND PLAINTIFF'S REQUST FOR RELIEF, UNDER OF 42 USC SEC. 1983.

267.    Defendants' acts and actions as set forth hereinabove violated and are about to violate Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the US Constitution which protect against bad faith prosecutions.

268.    The defendants acted and are about to further act in bad faith in staging a bad faith prosecution for the following reasons: (1) they used the complaints of Mrs. MDR and patient RM

which the defendants knew that were filed in furtherance of a documented extortionist scheme, as a pretext for furthering defendants' own conspiracy to violate the Sherman Antitrust Act; (2) they failed to dismiss the complaint regarding patient MV even though defendants' own allopathic physicians found that the consumer's complaints regarding the handling of the PICC did not constitute a violation of Texas law; (3) they specifically selected allopathic expert panel reviewers who repudiate CAM and integrative medicine services altogether to stage and bring about the formal license disciplinary process; (4) they inexplicably departed form their own regulations; (5) their own ISC panels' findings regarding the use of CAM and integrative medicine services were inconsistent with each other and were aimed at furthering the conspiracy to violate the antitrust statutes; (6) they fabricated issues which were not confined to the ones identified  in the initial consumer complaints.

270.    The defendants acted outside the scope of the complaint review process and outside the subject matter jurisdiction of the complaint review procedures imposed by Tex. Occ. Code. Secs. 154.051 through 154.05 for all the reasons articulated above and in furtherance of their conspiracy to violate the Sherman Antitrust Act and stage a bad faith prosecution. They also acted in contravention of their own regulations encompassed in 22 TAC Chapters 178 and 179.

271.    In bad faith, the defendants expanded the scope of the inquiry beyond the scope of the complaint review process for the purposes of fabricating grounds for prosecution aimed at eliminating CAM and integrative medical practices.

272.    The proposed staged bad faith prosecution is brought by the defendants in furtherance of their conspiracy to violate the Sherman Antitrust Act as alleged hereinabove. The other purpose of the bad faith prosecution is to harass and intimidate the Plaintiff for the offering of competitive CAM and integrative medicine services in Texas.

273.    A bad faith prosecution is one brought by the state or state officials or a state agency against an individual to retaliate against or to harass the plaintiff.  A bad faith prosecution is also one aimed at deterring an individual from exercising his constitutionally protected rights or depriving the individual of the protection of constitutionally protected rights.

274.    The Plaintiff has the constitutional right to be free from bad faith prosecution. The paradigm of bad faith prosecution applies in this jurisdiction to professional license disciplinary prosecutions.

275.    The defendants do not have powers or subject matter jurisdiction to use the medical license complaint, investigation ISC and disciplinary process as a cover for violations of the Sherman Antitrust Act.

276.    Moreover, the defendants' departure from their own regulatory scheme regarding the selection of expert panelists as provided in 22 TAC 182.8 and from the statutory scheme od 22 TAC Part 200 amounts to an unexplained departure from defendants' own standards and regulations. This departure coupled with the staging of the bad faith prosecution in turn ipso facto invalidate defendants' actions as ultra vires and unconstitutional.

277.    The defendants are about to further violate Plaintiff's constitutionally protected due process rights under the Fourteenth Amendment of the US Constitution in bypassing the provisions of the Texas APA rule making process. They are seeking to abrogate their own regulatory scheme contained in 22 TAC Part 200 through a bad faith ad hoc adjudicatory proceeding aimed at banning CAM and integrative medicine services altogether.

278.    A showing of the existence of a bad faith prosecution is tantamount to the showing of irreparable harm which mandates the issuance of an injunction pursuant to 42 USC Sec. 1983 by this court.

279.    This is an action brought inter alia under 42 USC Sec. 1983 for violation of Plaintiff's constitutionally protected civil rights. The Plaintiff is seeking to enjoin defendants' violation of his due process right ensured by the Fourteenth Amendment of the US Constitution and Texas Constitution to be free from bad faith prosecutions.

280.    These foregoing facts mandate the issuance of a federal injunction under 42 USC Sec. 1983 aimed at enjoining the further violation of Plaintiff's constitutionally protected due process rights.

### (X).    THE ABSTENTION DOCTRINE IS INAPPLICCABLE BECAUSE NO ADJUDICATIVE STATE OF ACTION WAS YET INSTITUTED AND BECAUSE THE DEFENDANTS PROPOSE TO MAINTAIN A BAD FAITH PROSECUTION.

281.    The abstention doctrine is inapplicable to the present case because the bad faith exception squarely applies.

282.    The defendants threatened to prosecute the Plaintiff in bad faith for no other reason than harassment and for the reason of furthering their own conspiracy to violate the Sherman Antitrust Act as alleged hereinabove

283.    Federal courts do not abstain in actions where bad faith prosecutions are at issue. Moreover, abstention is not warranted at the time of the commencement of this action because there are no ongoing state proceedings which are judicial in nature. The defendants have not yet filed a formal complaint at SOAH as directed by the ISC panels. The Plaintiff is seeking an injunction aimed at barring the defendants from proceeding with the bad faith formal disciplinary prosecution.

### (XI)   PARADIGMS OF ADMINISTRATIVE EXHAUSTION
### <u>DO NOT APPLY.</u>

284.    The administrative exhaustion exceptions of futility, inadequate administrative remedies, the agency acting outside the scope of its powers and subject matter jurisdiction and constitutional questions squarely apply in this case.

285.    Neither the defendants, not the State Office of Administrative hearings have any subject jurisdiction to hear and fashion Plaintiff's claims for antitrust violations. There are no administrative remedies akin to federal statutory relief provided by 15 USC Sec. 15 and 15 USC Sec. 26 for defendants' proposed antitrust violations.  The defendants are not authorized to award monetary antitrust damages against their own conduct specified in this complaint. Similarly, they do not have statutory powers to issue antitrust injunctions pursuant to 15 USC Sec. 26.

286.    Consequently, the inadequate administrative remedy exception applies to this case.

287.    Moreover, where the complaint raises pure issues of law and constitutional violations administrative exhaustion also does not apply. That is the case here for all for the reasons articulated in this complaint.

288.    Where the agency and its constituents, in this case the Board and the defendants, acted and are about to act in excess of the scope of their subject matter jurisdiction administrative exhaustion is inapplicable.

289.    In this case, the defendants staged their own illegitimate issues specified above I this complaint, in order to give credence to the commencement of the bad faith prosecution. They departed and are seeking to depart from the agency's own regulations to facilitate the violation of Plaintiff's constitutionally protected due process rights. Consequently, administrative exhaustion also does not apply.

290.    In this case, it is alleged that the defendants acted and are about to act in excess of their subject matter jurisdiction by using their official capacities and misusing the provisions of Texas law to further their conspiracy to violate the Sherman Antitrust Act.

291.    The complaint also alleges ultra vires acts because the defendants are seeking to restrict the practice of CAM and integrative medicine in Texas while inexplicably departing from the Board's own regulatory scheme encompassed in 22 TAC Part 200. That regulation specifically allows for such practice of medicine to take place in Texas.

292.    To facilitate the bad faith prosecution, the defendants also inexplicably departed from their own regulation 22 TAC 182.8 by specifically selecting expert panel reviewers who do not practice medicine in the same area of expertise as the Plaintiff and who repudiate CAM and integrative medicine altogether.

293.    Those so called "experts" facilitated the conspiracy to stage a bad faith prosecution and generated illegitimate reports excluding CAM and integrative medicine in their entirety from the practice of medicine in Texas.

294.    For all the foregoing reasons, paradigms of administrative exhaustion do not apply.

## AS AND FOR FIRST CLAIM FOR INJUNCTION UNDER THE CLAYTON ANTITRUST ACT, 15 USC SEC. 26.

295.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

296.    The defendants engaged and continue to engage in a conspiracy to violate 15 USC Sec. 1 by using their official position as state officials to impose unreasonable restrictions on medical trade in Texas and to exclude competitive CAM and integrative medicine services to the public in Texas.

297.   The defendants seek to further their conspiracy in violation of the Sherman Antitrust Act by engaging in horizontal restraint of trade, horizontal market allocation, price fixing as set forth above.

298.   The defendants further seek to violate the Sherman Antitrust Act 15 USC Sec. 2 by seeking to form a monopoly of allopathic medicine services.

299.   Defendants' actions and the proposed prosecution of the Plaintiff have an anticompetitive effect as alleged above.

300.   Defendants' actions are aimed at restricting market and consumer choice, controlling prices and market reallocation of patients who seek CAM and integrative medicine service.

301.   These actions caused and continue to cause harm to the Plaintiff who already expended a large amount of attorney fees in countering defendants' anticompetitive actions, had to cancel scheduled patients to respond to defendants' illegitimate inquiries and to attend the bogus ISC sessions scheduled in Austin.

302.   Defendants' actions have multiple anticompetitive effects on the medical services market as alleged above in this complaint.

303.   The defendants' actions harm and threaten to cause irreparable harm to the Plaintiff and market competition in Texas as alleged above in this complaint.

304.   For all the foregoing reasons, the Plaintiff requests that this Court issue relief in the form of an injunction pursuant to 15 USC Sec. 26.

305.   The Plaintiff requests that the Court enjoin the defendants, their servants, agents and assigns from acting or in any way causing anyone to act to restrict Plaintiff's competitive CAM

49

and integrative medical services under the color of Texas law or through any other actions aimed at restricting Plaintiff's CAM and integrative medicine practice.

306.    The Plaintiff requests that the court enjoin defendants' conspiracy to violate the Sherman Antitrust Act and the furtherance of the same through the implementation of the formal license disciplinary process.

## SECOND CLAIM FOR TREBLE DAMAGES UNDER 15 USC SEC. 15 FOR VIOLATION OF THE SHERMAN ANTITRUST ACT.

307.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

308.    15 USC Sec. 15 permits any person who is injured by defendants' antitrust conduct to maintain an action for damages and recover threefold the damages sustained by the Plaintiff from defendants' conduct.

309.    The Plaintiff alleges that as a result of defendants' conduct as specified in this complaint, he has sustained financial losses and damages and expenditures associated in responding to and defending against defendants' antitrust actions.

310.    He further sustained actual damages as a result of patient cancellations and rescheduling which resulted from defendants' antitrust conspiracy and acts as set forth above in this complaint.

311.    The defendants are market participants and the State of Texas does not exercise immediate administrative supervision over defendants' antitrust conduct. Consequently, the defendants do not have state action immunity against the injunctive and monetary relief sought herein.

312.    For all the foregoing reasons the Plaintiff requests that this Court award him treble damages against the defendants in accordance with 15 USC Sec. 15 in an amount to be proven and determined at the time of trial.

### AS AND FOR A THIRD CLAIM - PERMANENT INJUNCTION PURSUANT TO 42 USC SEC. 1983 ENJOINING DEFENDANTS' THREATENED CONSTITUTIONAL VIOLATIONS.

313.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

314.    The defendants violated and are about to violate Plaintiff's constitutionally protected rights safeguarded by the Fourteenth Amendment of the US Constitution to be free from bad faith prosecutions, as set forth above in this complaint.

315.    The defendants violated and continue to violate Plaintiff's constitutionally due process right by fabricating and threatening to maintain such bad faith prosecution against the plaintiff in furtherance of their conspiracy to violate the Sherman Antitrust Act.

316.    42 USC Sec. 1983 vests this Court with subject matter jurisdiction to issue equitable relief, including an injunction to enjoin the further deprivation of Plaintiff's due process rights including a bad faith prosecution.

317.    Consequently, the Plaintiff is seeking a permanent injunction pursuant to 42 USC Sec. 1983 as follows: (a) permanently enjoining the defendants from maintaining a bad faith prosecution against the Plaintiff as alleged in this complaint; (b) permanently enjoining the defendants from using the Texas investigative ISC and formal license disciplinary process for the purposes of furthering their conspiracy to violate the Sherman Antitrust Act; (c) permanently enjoining the defendants from acting in excess of their powers and subject matter jurisdiction as alleged in this complaint.

## AS A FOURTH CLAIM - DECLARATORY
## JUDGMENT PURSUANT TO 28 USC §2201.

318.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

319.    In addition to the allegations set forth above in this complaint, Defendants' proposed actions in seeking to restrict Plaintiff's provision of CAM and integrative medicine services violate US Constitution Art. I Sec. 8 Cl. 3. They impose an unreasonable restriction and burden on commerce and they restrict the choice of medical services available to out of state patients who seek Plaintiff's services.

320.    The Plaintiff hereby requests that the Court issues a declaratory judgment pursuant to 28 USC Section 2201 as follows:

(A)    Declaring the actions and acts of the defendants, their agents, servants and assigns in engaging in bad faith prosecution as set forth above as illegal and in excess of the powers and subject matter jurisdiction of the defendants;

(B)    Declaring defendants' actions and acts as being in excess of defendants' powers and subject matter jurisdiction and as acts in furtherance of their conspiracy to violate 15 USC Secs. 1 and 15 USC Sec. 2 as set forth in this complaint.

(C)    Declaring defendants' actions and acts as alleged in this complaint as acts which are in violation of Plaintiff's constitutionally protected due process rights under the Fourteenth Amendment of the US Constitution;

(D)    Declaring defendants' actions and acts as alleged in this complaint as acts which are in violation of US Constitution Art. I Sec. 8 Cl. 3;

(E)    Declaring defendants' actions taken in violation of their own regulations as alleged in this complaint as actions which are null and void as a matter of law;

52

(F)     Declaring defendants' proposed restraint of CAM and integrative medicine services as acts which violate 15 USC Secs. 1 and 15 USC Sec. 2 as set forth in this complaint.

## AS A FIFTH CLAIM –PRELIMINARY INJUNCTION PURSUANT TO FRCVP 65.

321.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

322.    For the purposes of preserving the status quo and preventing the defendants from causing further injuries to the Plaintiff by further violating his constitutionally protected due process rights as well as by further violating the Sherman Antitrust Act as alleged above, the Plaintiff is seeking a preliminary injunction pursuant to FRCVP 65 as follows:

(a)     Preliminarily enjoining the defendants, their servants agents and assigns from further engaging in anti-competitive conduct in violation of the Sherman Antitrust Act by using the Texas formal license disciplinary process to further their conspiracy to restrict Plaintiff' CAM and integrative medicine competitive services as alleged in this complaint;

(b)     Preliminarily enjoining the defendants, their servants, agents and assigns from violating or causing to violate Plaintiff's constitutionally protected due process rights as set forth in this complaint by maintaining a bad faith prosecution;

(c)     Preliminarily enjoining the defendants from taking any action or causing any action to be taken against Plaintiff's medical license as such actions are illegal, unconstitutional and in derogation of Plaintiff's due process rights as alleged in this complaint;

(d)     Preliminarily enjoining the defendants from violating or causing to violate   US Constitution Art. I Sec. 8 Cl. 3 as alleged in this complaint.

323.    The Plaintiff alleges that in the absence of a preliminary injunction the defendants will inflict further irreparable harm on the Plaintiff by: (1) violating his Fourteenth Amendment

constitutionally protected due process rights by maintaining a bad faith prosecution for the purposes of furthering their antitrust conspiracy and for the further purposes of harassment, as alleged in this complaint and (2) will further violate US Constitution Art. I Sec. 8 Cl. 3.

324.    A violation of constitutional rights amounts to irreparable harm in the context of an application for a preliminary injunction.

325.    In addition, Plaintiff's business interests will be irreparably harmed for all the reasons articulated above in this complaint.

326.    The Plaintiff is likely to succeed of the merits of this action for all the reasons articulated above in this complaint.

327.    The balancing of the equities is in plaintiff's favor and there are no hardships ensuing to the defendants because of the issuance of a preliminary injunction.

328.    A preliminary injunction will prevent further harm to the Plaintiff during the pendency of this action and the irreparable harm caused to Plaintiff's constitutional rights and business because of defendants' violation of the Sherman antitrust Act and of the US Constitution as set forth above.

329.    On the other hand, the defendants have no legitimate reason to act in violation of the US Constitution and the Sherman Antitrust Act as set forth in this complaint.

330.    Preventing further constitutional violations and upholding Plaintiff's constitutional rights to be free from bad faith prosecution is in the public interest.

WEHREFORE the Plaintiff demands judgment against the defendants as follows:

1.      In the first claim an injunction pursuant to 15 USC Sec. 26 in the form and substance alleged in this complaint;

2.      In the second claim, treble damages against the defendants pursuant to 15 USC Sec.

15 in an amount to be proven and determined at the time of trial;

3.      In the third claim, and injunction pursuant to 42 USC Sec. 1983 in the form and

substance alleged in this complaint;

4.      In the fourth claim, a declaratory judgment pursuant to 28 USC Section 2201 in the

form and substance alleged in this complaint.

5.      In the fifth claim, a preliminary and a permanent injunction pursuant to FRCVP 65

in the form and substance alleged in this complaint;

Dated: January 30, 2017.

## JURY DEMAND

The Plaintiff demands trial by Jury pursuant to Federal Rule of Civil Procedure 38 of all

issues and claims set forth in this complaint.

Attorney for the Plaintiff

/s/ JACQUES G. SIMON
Jacques G. Simon, Esq.
Texas Bar No.: 24068190
100 Jericho Quadrangle, Suite #208
Jericho, NY 11753
Phone (516) 378-8400
Fax:    (516) 378-2700
email: jgs@jacquessimon.com

## VERIFICATION

IN THE STATE OF TEXAS  )

HARRIS COUNTY           )

BEFORE ME, the undersigned authority, on this day personally appeared George Allibone M.D. known to me to be the person whose name is subscribed to the instrument herein below, and having been duly sworn, upon oath, deposes and states as follows:

1.     My name is George Allibone, I am over the age of twenty-one (21) years, of sound mind and have never been convicted of a felony.  I am an adult resident of the State of Texas and am fully competent and capable to testify herein.  I am a physician licensed to practice in the State of Texas and I am the Plaintiff herein.  I have personal knowledge of all the facts set forth herein, and I am able to swear, and I hereby do swear, that all the facts and statements herein are true and correct.

2.     I have read the above Complaint and know all the facts therein to be true to the best of my knowledge except those facts stated upon information and belief and as to those I believe them to be true. The source for my belief is the documents and the correspondence mentioned in the Complaint.

George Allibone M.D.

Sworn to and subscribed before me
on the 24 day of January, 2017

H Patel

Notary Public, State of Texas
My Commission expires January 14, 2018


HEMIKSHA PATEL
Notary Public, State of Texas
My Commission Expires
January 14, 2018

50