# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

GEORGE ALLIBONE M.D.,         §
    *Plaintiff*,             §
                          §
  V.                       §
                          §
TEXAS MEDICAL BOARD ("BOARD"); §
MICHAEL ARAMBULA, M.D., PHARM.D.; §
JULIE K. ATTEBURY; DAVID BAUCOM; §
FRANK DENTON; JOHN ELLIS, JR., J.D.; §  **CIVIL ACTION NO.  1:17-CV-00064-SS**
CARLOS L. GALLARDO; MANUEL §
GUAJARDO, M.D.; JOHN GUERRA, D.O.; §
SCOTT HOLIDAY, D.O.; MARGARET §
MCNEESE, M.D.; ALLAN SHULKIN, M.D.; §
ROBERT D. SIMONSON, D.O.; WAYNE M. §
SNOOTS, M.D.; KARL SWANN, M.D.; §
PAULETTE BARKER SOUTHARD; SURENDRA §
K. VARMA, M.D.; STANLEY WANG, M.D.; §
TIMOTHY WEBB, J.D.; GEORGE WILLEFORD, §
III, M.D.; in their Official Capacities as §
Members of the Board and Individually, §
    *Defendants*.          §

---

## DEFENDANTS' MOTION TO DISMISS

---

TO THE HONORABLE JUDGE SPARKS:

      Defendants the Texas Medical Board and Michael Arambula, M.D., Pharm.D.,

Julie K. Attebury, David Baucom, Frank Denton, John Ellis, Jr., J.D., Carlos L.

Gallardo; Manuel, Guajardo, M.D., John Guerra, D.O., Scott Holiday, D.O., Margaret

Mcneese, M.D., Allan Shulkin, M.D., Robert D. Simonson, D.O., Wayne M. Snoots,

M.D., Karl Swann, M.D., Paulette Barker Southard, Surendrak K. Varma, M.D.,

Stanley Wang, M.D., Timothy Webb, J.D., and George Willeford, III, M.D.

(collectively "Members of the Board") file this Motion to Dismiss, and in support thereof, would respectfully show the Court the following:

## Introduction

Dr. George Allibone ("Allibone") is not the victim of a vast conspiracy. In reality, he is a physician that is under investigation for numerous written complaints that his patients filed with TMB. The patient complaints at the heart of this action run the gamut from failure to meet the standard of care, medical record keeping violations, non-therapeutic treatments, a HIPAA violation, and unprofessional conduct.[1]

In an effort to prevent these allegations from proceeding to a hearing before the State Office of Administrative Hearings ("SOAH"), Allibone commenced this action. He claims that the Texas Medical Board ("TMB"), along with its individual members (the "Board Members"), committed antitrust and constitutional violations. Yet his claims fail for a myriad of reasons.

To begin, TMB and the Board Members, in their official capacities, possess sovereign immunity to the antitrust claims. In addition, despite Allibone's efforts to plead around the issue, the independent doctrine of state action immunity, also known as *Parker* immunity, forecloses the antitrust claims. Even if Allibone were successful in navigating the immunity-minefield, he nonetheless fails to allege a viable antitrust claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure

---

[1] This list is not exhaustive. TMB further addresses the patient complaints and the disciplinary process in its Opposition to Plaintiff's Motion for a Preliminary Injunction.

("Rule 12(b)(6)").

Allibone's due process and dormant commerce clause claims do not fare any better. As a threshold matter, the Fifth Circuit simply does not recognize a freestanding "bad faith prosecution" claim. To the extent Allibone attempts to allege a substantive or procedure claim, the Court should still dismiss them under Rule 12(b)(6). Setting aside these deficiencies, sovereign immunity, absolute immunity, and qualified immunity bar portions of any due process claim. Finally, Allibone simply falls short of alleging a viable dormant commerce clause claim.

At bottom, Allibone is attempting to dodge a SOAH proceeding under the guise of a federal antitrust conspiracy and constitutional claims. These efforts to distort federal law must fail. As a result, TMB and the Board Members respectfully request the Court dismiss this action in its entirety.

## Standards of Review

"[T]he court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[2] "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," so that "the plaintiff constantly bears the burden of proof that jurisdiction does, in fact, exist."[3] Under this rule, this Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by

---

[2] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal quotation marks omitted).
[3] *Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013).

undisputed facts plus the court's resolution of disputed facts."[4]

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[5] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[6] Although a court accepts all well-pleaded facts as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[7]

## Argument

### 1.  The Court Should Dismiss the Antitrust Claims

#### 1.1 Sovereign immunity bars the antitrust claims.

The Eleventh Amendment prohibits actions against non-consenting states by private citizens in federal court.[8] This prohibition also extends to non-consenting agencies or departments regraded as an "arm" or "alter ego" of the state.[9] As a result, a state agency is entitled to sovereign immunity absent consent or abrogation by the United States Congress.[10]

---

[4] *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

[5] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

[6] *Twombly*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Edelman v. Jordan*, 415 U.S. 651 (1974).

[9] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Vogt v. Bd. of Comm'rs of New Orleans Levee Dist.*, 294 F.3d 684, 688-89 (5th Cir. 2002).

[10] *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir.

Sovereign immunity also precludes actions against state officers in their official capacities—subject to the *Ex parte Young* exception.[11] Under *Ex parte Young*, courts have authority to order prospective relief against officials. Namely, if a plaintiff "alleges an ongoing violation of federal law," the court may order an official to conform her *future conduct* to the requirements of federal law."[12] *Ex parte Young*, however, does not "permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer[.]"[13]

### 1.1.1   TMB possess sovereign immunity to the antitrust claims.

TMB is entitled to sovereign immunity to the antitrust claims.[14] It is unquestionable that TMB is an arm of the executive branch, which is "statutorily empowered to regulate the practice of medicine in Texas."[15] Moreover, TMB did not consent to this suit and Congress has not abrogated TMB's sovereign immunity via the Sherman Act. In fact, Congress cannot abrogate sovereign immunity through commerce clause legislation.[16] Therefore, the Court should dismiss all the antitrust

---

2014) (citations omitted).

[11] *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).

[12] *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011); *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (emphasis added).

[13] *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997).

[14] The *Ex parte Young* expectation "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

[15] 22 TEX. ADMIN. CODE § 161.1; *see also Peters v. Tex. Med. Bd.*, No. 15-2858, 2015 U.S. Dist. LEXIS 188516, *4 (S.D. Tex. Oct. 8, 2015) ("As a state agency, the Texas Medical Board is entitled to Eleventh Amendment immunity from suit") (citing *Gilbert v. Perry*, 302 F. App'x 320 (5th Cir. 2008)).

[16] *See Rodgers v. State Bd. of Nursing*, 665 F. App'x 326, 330 (5th Cir. 2016), *cert. denied*, 2017 U.S. LEXIS 3342 (2017) (holding that Congress has not and could not unequivocally abrogated Louisiana's sovereign immunity via the Sherman Act); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64-66 (1996) (noting that Congress cannot abrogate a states' sovereign immunity through legislation under the Commerce Clause).

claims, both monetary and injunctive in nature, against TMB because it is entitled to sovereign immunity.

### 1.1.2  The Board Members also hold sovereign immunity.

Dismissal based on sovereign immunity is also appropriate for the antitrust claims against the Board Members seeking monetary and injunctive relief. To begin, sovereign immunity clearly prohibits Allibone's treble damages claims because "*Ex parte Young* cannot be used to expose states [via a state official] to retroactive monetary damages."[17] Hence, these claims should be disposed of in short order.

In addition, Allibone's claims seeking injunctive or declaratory relief fail because he does not properly leverage *Ex parte Young*.  Under *Ex parte Young*, Allibone may sue only to obtain prospective injunctive relief from an *ongoing violation of federal law*.[18] As the Supreme Court has explained *Ex parte Young's* applicability entails a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[19] Here, Allibone's complaints are not prospective because they only address completed past acts of the Board Members—the completed investigation and ISC. It is axiomatic that these completed acts do not constitute an ongoing violation. Hence, the antitrust claims seeking injunctive and declaratory relief do not implicate *Ex parte Young* and the Court should the claims against the individual Board

---

[17] *Okpalobi v. Foster*, 244 F.3d 405, 439-440 (5th Cir. 2001) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974) and *Hutto v. Finney*, 437 U.S. 678 (1978)).
[18] *AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 647 (5th Cir. 2001); *see also NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015) (explaining that injunctive relief under *Ex parte Young* must address ongoing acts).
[19] *Verizon Md., Inc. v. Pub. Sew. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Members.

### 1.2 The TMB and Board Members are entitled to *Parker* immunity.

In addition to sovereign immunity, the Board Members and TMB have *Parker* immunity, also known as state action immunity. Within the Fifth Circuit, sovereign immunity and *Parker* immunity are discrete defenses "providing different—if sometimes overlapping—spheres of protection from private federal antitrust claims."[20] While sovereign immunity derives from the Eleventh Amendment, *Parker* immunity originates from "statutory construction, legislative intent, and judicial deference to federalism."[21]

In *Parker v. Brown*,[22] the Supreme Court explained that a state is immune under the Sherman Act for alleged anticompetitive behavior.  To determine the applicability of this immunity, a court must "determin[e] whether anticompetitive policies are indeed the action of a State in its sovereign capacity."[23] In cases "involving the anticompetitive conduct of a nonsovereign state representative," the Supreme Court "has required a showing that the conduct is pursuant to a clearly articulated and affirmatively expressed state policy to replace competition with regulation" and "also has found the degree to which the state legislature or supreme court supervises its representative to be relevant to the inquiry."[24]

---

[20] *Rodgers v. State Bd. of Nursing*, 665 F. App'x 326, 329 (5th Cir. 2016), *cert. denied*, 2017 U.S. LEXIS 3342 (2017).
[21] *Id.*
[22] 317 U.S. 341 (1943).
[23] *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1112 (2015); *see also Hallie v. Eau Claire*, 471 U. S. 34, 45 (1985); *Cal. Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U. S. 97 (1980).
[24] *Hoover v. Ronwin*, 466 U.S. 558, 560 (1984).

The Supreme Court has explained that the "clear articulation requirement is satisfied where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature."[25] In that scenario, the State must have foreseen and implicitly endorsed the anticompetitive as consistent with its policy goal."[26]

The Court has also held that "the need for supervision turns not on the formal designation given by States to regulators but on the risk that active market participants will pursue private interests in restraining trade."[27]  Instead, the supervision requirement turns on the "structural risk of market participants' confusing their own interests with the State's policy goals."[28] Prior cases on active supervision of private conduct have "identified only a few constant requirements of active supervision," namely: (1) review of the substance of the decision and not just the procedures producing it; (2) power to veto or modify decisions that do not accord with state policy; (3) actual and not merely potential review by the supervisor; and (4) a supervisor not itself an active market participant.[29]  The Court also noted that the active-supervision test "is flexible and context-dependent."[30]  At its core, the active supervision requirements is a context-specific assessment of the "risk that active market participants will pursue private interests" instead of faithfully

---

[25] *FTC v. Phoebe Putney Health Sys.*, 568 U.S. 216 (2013).
[26] *Id.*
[27] *N.C. State Bd. of Dental Exam'rs*, 135 S. Ct. at 1114.
[28] *Id.* (citing *Patrick v. Burget*, 486 U.S. 94, 100, 108 (1988)).
[29] *Id.* at 1116-17.
[30] *Id.* at 1116.

pursuing state policy.[31]

The clear-articulation requirement is satisfied here because TMB's authority to investigate the complaints against Allibone derives directly from statute. The State has unequivocally charged TMB with "protect[ing] the public's safety and welfare through the regulation of the practice of medicine."[32] The TMB "fulfills [this] purpose primarily through the licensure and discipline of physicians . . . as mandated by law."[33] This mandate includes "receiving complaints and investigat[ing] possible violations of the Medical Practice Act and the Board Rules."[34] The TMB has done exactly what the State has asked it to do: investigate complaints against a physician. In doing so, TMB has easily met the clear-articulation requirement of *Parker* immunity.

Additionally, the State actively supervises TMB's investigative function via legislative oversight. For instance, the Governor of Texas appoints and the Texas Senate confirms the Board Members. Each Board Member takes an oath of office and must follow Texas's open-government and ethics laws, including the open-meetings, open-records, conflict-of-interest and financial-disclosure laws. Moreover, Board Members may not be an officer or employee of any "association of business or professional competitors in this state designed to assist its members and its industry or profession" in promoting their common interests.[35] With the Senate's approval,

---

[31] *Id*. at 1114.
[32] 22 TEX. ADMIN. CODE § 161.2 (a).
[33] *Id*.
[34] *Id*. § 161.2 (b)(5).
[35] TEX. OCC. CODE § 152.004(a), (c).

the Governor may also remove any board member he appoints. The Legislature further oversees TMB's conduct through the sunset-review process. At bottom, by its very composition, TMB is accountable to the Legislature and Governor, and therefore is subject to active supervision.

The state-court judicial review procedure also serves as active supervision. TMB is empowered to investigate complaints against physicians. TMB investigates each complaint filed and, if it pursues the complaint, first conducts an internal "informal proceeding" or ISC to seek resolution. In the event the ISC does not resolve the complaint, "an administrative law judge [("ALJ")] employed by [SOAH]" holds a formal hearing.[36] SOAH is an independent state agency that is "not responsible to or subject to the supervision, direction, or indirect influence" of anyone outside SOAH— including TMB.[37] At the hearing, the ALJ takes evidence and determines whether the physician has indeed violated the statute or TMB rule.[38] The ALJ then issues findings of fact and conclusions of law.[39]

While most state agencies have authority to modify or vacate ALJ's findings and conclusions, TMB does not.[40] Instead, TMB's discretion extends only to determining the appropriate sanction for any violation found by the ALJ.[41] If either

---

[36] TEX. OCC. CODE § 164.007(a).

[37] TEX. GOV'T CODE § 2003.041(c).

[38] TEX. OCC. CODE § 164.007.

[39] TEX. GOV'T CODE § 2001.058(e).

[40] TEX. OCC. CODE § 164.007(a) ("[T]he board shall dispose of the contested case by issuing a final order based on the administrative law judge's findings of fact and conclusions of law"); *id.* § 164.007(a-1) ("[T]he board may not change a finding of fact or conclusion of law or vacate or modify an order of the administrative law judge").

[41] *Id.* § 164.007(a-1).

TMB or the physician seeks to challenge the ALJ's findings or conclusions, their only recourse is judicial review in state district court.[42]  In that review, the court conducts a de novo review that the non-prevailing party may appeal.  With this judicial review process in place, the State has mitigated any real risk that active market participants on the TMB will pursue private interests instead of faithfully pursuing state policy.[43]

As a result of the abovementioned, the Court should dismiss the antitrust claims because the TMB and the Board Members are entitled to *Parker* immunity.

### 1.3 Allibone has failed to allege viable antitrust claims.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."[44]  To prevail a plaintiff must show that "(1) the defendants engaged in a conspiracy, (2) the conspiracy restrained trade, and (3) trade was restrained in the relevant market."[45]  In this instance, Allibone's Section 1 claim fails because he does not sufficiently allege an injury to the market as a whole or a viable conspiracy.

---

[42] *Id.*; *see also* TEX. GOV'T CODE § 2001.174, § 2001.901(a).

[43] In the Complaint, Allibone claims that the TMB and Board Members also violated the dormant Commerce Clause. The fact Allibone brought this claim undercuts his ability to claim that the TMB and Board Members were not acting in the interest of the State because the Commerce Clause restricts certain *state regulation* of interstate commerce. A State must therefore be exercising inherently *governmental powers* that are *unavailable to private parties* in order to violate the dormant Commerce Clause. This admission cannibalizes his antitrust arguments that the TMB and its Board Members were acting not state actors when they investigated him.

[44] 15 U.S.C. § 1.

[45] *Neal v. Trans Ova Genetics*, No. 12-322, 2013 U.S. Dist. LEXIS 195709, *6 (W.D. Tex. 2013) (citing *Wampler v. Southwestern Bell Tele. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) and *Apani S.W., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 627 (5th Cir. 2002)).

### 1.3.1  Allibone failed to allege antitrust injury.

In order to recover for an antitrust violation, a plaintiff must suffer injuries caused by the violation "of the type that the antitrust laws were intended to prevent," specifically, an injury to the market as a whole.[46]  Stated differently, the antitrust injury "should reflect the anticompetitive effect . . . of the violation."[47]  This injury must appear on the face of the complaint.[48]

While Allibone claims an injury due to the investigation, he is silent about how it would injure the market at large beyond bald assertions. For instance, Allibone does not identify any other certified alternative medicine practitioner that was harmed by TMB's investigation of him. Instead, he simply claims that TMB "target[s] a large segment of the CAM and integrative medicine in Texas in an effort to restrict the competitive medical service offered by such physicians in Texas."[49] Yet he provides no factual support or explanation for this claim. Hence, he has failed to allege an antitrust injury.

### 1.3.2 Allibone has not alleged a conspiracy.

Beyond failing to allege an antitrust injury, Allibone does not establish the existence of an anticompetitive conspiracy among his actual competitors.[50]  The showing of concerted action is vital to a Section 1 claim.[51]  The Supreme Court has

---

[46] *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 399 (E.D. La. 2013) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).
[47] *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007).
[48] *See, e.g.*, *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 939 (5th Cir. 1988).
[49] Complaint at ¶ 214.
[50] *See Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223-24 (1940).
[51] *Tunica Web Adver. v. Tunica Casino Operators Ass'n*, 496 F.3d 403, 409 (5th Cir. 2007).

clearly stated that in order to survive a motion to dismiss a plaintiff must provide "sufficient factual matter (taken as true) to suggest that an agreement was made," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."[52]  In contrast, "an allegation of parallel conduct and a bare assertion of conspiracy"—such as defendants "agreed with each other" or "conspired together" to take the anticompetitive actions—does not suffice.[53]

Here, Allibone fails to allege a conspiracy. While the Complaint is littered with conclusory statements about individuals "conspiring" or "agreeing," Allibone includes no further factual detail to suggest that an agreement was made—let alone "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."[54]  Notably, Allibone does not even identify the Board Members involved or when the unidentified Board Members allegedly reached this alleged agreement. Furthermore, Allibone has not attempted to provide any context for these threadbare allegations that raises a suggestion of a past agreement, not just parallel conduct. As a result, the Court should dismiss the Section 1 claim for failing to allege an antitrust injury or sufficient facts to support a conspiracy.

### 1.3.2   The monopoly claim is deficient.

Allibone simply does not allege a viable attempted monopoly claim under Section 2.[55] Under Section 2, it is a crime for any person to "attempt to monopolize .

---

[52] *Twombly*, 550 U.S. at 556.
[53] *Id*.
[54] *Id*.
[55] It appears based upon the verb tenses used in the Complaint that Allibone is asserting an attempted monopoly claim. In the event Allibone is also asserting a completed monopoly or conspiracy to monopolize claim, these claims fail for the same reasons as stated above.

. . any part of the trade or commerce among the several States, or with foreign nations[.]"[56] To prevail on an attempted monopoly claim, a plaintiff must plead and prove: "(1) the defendant engaged in predatory or anti-competitive conduct; (2) with the specific intent to monopolize; and (3) with a dangerous probability of attaining monopoly power."[57]

Like his Section 1 claim, Allibone has offered insufficient facts to make out the elements of a Section 2 claim. At the outset, Allibone has not stated with any factual support that the TMB engaged in any anticompetitive behavior. Further, Allibone cannot demonstrate a dangerous probability of success in creating a monopoly. He has failed to allege that the TMB has a specific market share—let alone a significant share—and he also failed to allege facts concerning high barriers to entry, consumer demand, the strength of the competition, or consolidation trends in the relevant markets. Instead, Allibone musters only a bare allegation that there is a dangerous probability. This allegation is insufficient and the Section 2 claim must be dismissed.[58]

### 2. The Court Should Dismiss the Bad Faith Prosecution Claim.

Turning from the antitrust claims, Allibone next lodges a bad faith prosecution claim via Section 1983. Again, his efforts fall short. At the threshold, TMB and the Board Members enjoy sovereign immunity. Furthermore, the Board Members enjoy

---

[56] 15 U.S.C. § 2.
[57] *WickFire, LLC v. Trimax Media, Inc.*, No. 14-34, 2016 U.S. Dist. LEXIS 39822, *19 (W.D. Tex. 2016) (citing *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir. 2000)).
[58] *Zhejiang Med. Co. v. Kaneka Corp.*, No. 11-1052, 2012 U.S. Dist. LEXIS 194644, *11 (S.D. Tex. 2012).

absolute and qualified immunity. Finally, setting immunity aside, Allibone has simply failed to allege a viable due process claim.

### 2.1 The TMB and Board Members hold immunity.

As stated above, sovereign immunity bars suits brought in federal court against a state. Absent waiver, this immunity applies regardless of the relief sought and extends to state agencies.[59] Section 1983 does nothing to abrogate a states' immunity.[60] As a result, states and state agencies do not qualify as "persons" subject to suit under § 1983.[61]

In this instance, TMB and the Board Members are immune to the Section 1983 claim. As discussed within the context of the antitrust claims, TMB is undoubtedly a branch of the executive branch entitled to immunity. Moreover, Allibone's complaints against the Board Members fail to leverage *Ex parte Young* because he takes umbrage with completed past acts of the Board Members—the completed investigation and ISC. Clearly, these complaints do not pertain to any ongoing violation of federal law. Thus, the Section 1983 claims should be dismissed regardless of the requested relief.

### 2.2 Absolute and qualified immunity applies.

Even if the Eleventh Amendment does not bar the suit, the doctrines of absolute and qualified immunity shields government officials performing discretionary functions from liability as well as from suit.[62]

---

[59] *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).
[60] *Quern v. Jordan*, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not "override the traditional sovereign immunity of the States").
[61] *Cheramie v. Tucker*, 493 F.2d 586, 587 (5th Cir. 1974).
[62] *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Brown v. Tex. State Univ. Sys. Bd. of*

### 2.2.1  Absolute immunity applies to the ISC.

State agents who perform quasi-judicial or quasi-prosecutorial functions are entitled to absolute immunity from suit in their individual capacities.[63]  Absolute immunity extends to employees of TMB who perform quasi-judicial or quasi-prosecutorial duties.[64] Although courts examine the nature of the function performed and not the identity or title of the actor who performed it, the Court may only determine quasi-judicial or quasi-prosecutorial absolute immunity to be applicable when the official's challenged activities arise from the performance of her traditional official duties.[65]  Notably, the Fifth Circuit has previously held that TMB Board Members and attorneys participating in an ISC fall under absolute immunity.[66]

---

*Regents*, No. 13-483, 2013 U.S. Dist. LEXIS 173818, *9 (W.D. Tex. Dec. 12, 2013)

[63] *See Butz v. Economou*, 438 U.S. 478, 512-513 (1978) (holding that executive branch officials, when participating in a federal administrative agency's adjudicative process, were entitled to absolute immunity because they performed functions comparable to those of judges and prosecutors); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 (5th Cir. 2000), *cert. denied*, 531 U.S. 871 (2000) (holding that board members of Texas State Board of Dental Examiners performed quasi-judicial functions and were entitled to absolute immunity); *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997) ("Absolute immunity denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct.").

[64] *Di Ruzzo v. Tabaracci*, 480 F. App'x 796, 797 (5th Cir. 2012) (concluding that the "counsel and members of the Texas Medical Board [performed] quasi-prosecutorial and quasi-judicial functions," entitling them to absolute immunity.).

[65] *See Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) (reaffirming the notion that "the prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate" (emphasis added)); *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976) (common-law absolute immunity for judges applies to "acts committed within their judicial jurisdiction," and a prosecutor similarly enjoys absolute immunity when acting "when he acts within the scope of his prosecutorial duties " (internal quotation marks and citation omitted) (emphases added)); *see also Hunter v. Louisiana State Bd. of Med. Examiners*, CV 15-1833, 2016 WL 3388380, at *3 (E.D. La. June 20, 2016) (citations omitted) ("The Fifth Circuit has repeatedly held that medical/health professional boards are entitled to absolute immunity when performing adjudicatory and prosecutorial functions."); *Haygood v. Begue*, 13-CV-0335, 2014 WL 1315004, at *3 (W.D. La. Mar. 31, 2014) (extending absolute immunity to independent counsel hired by Louisiana Dental Board and acting in quasi-judicial function).

[66] *Di Ruzzo*, 480 F. App'x at 797 (finding that TMB defendants' conduct associated with

Because Allibone sues the Board Members based on their alleged conduct during the course of the ISCs, each is entitled to absolute immunity for related claims.

### 2.2.2  Qualified immunity also applies to the acts of the Board Members.

When defendants raise a defense of qualified immunity in a 12(b)(6) motion, they are "entitled to dismissal before the commencement of discovery" unless the plaintiff alleges a violation of established law.[67] Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."[68] Qualified immunity applies even if a government official commits "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[69]

Allibone asserts claims against the Board Members for actions each took within the course and scope of employment with the Texas Medical Board and as provided for by Texas law, as set forth above. The Board Members have at all times acted in good faith, and plead qualified immunity to Plaintiffs' claims.  The burden now rests with Allibone to rebut the Board Members' entitlement to qualified immunity.[70]

---

Informal Settlement Conference fell under absolute immunity as "quasi-judicial" and "quasi-prosecutorial").

[67] *See Morgan v. Swanson*, 610 F.3d 877, 882 (5th Cir. 2010) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[68] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[69] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

[70] *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

In order to abrogate qualified immunity, Allibone must prove (1) a violation of a clearly established constitutional right by each Defendant, and (2) that the conduct of each Defendant was not objectively reasonable in light of clearly established law at the time of the events giving rise to the suit.[71] Allibone fails to assert facts that satisfy this requisite analysis.

Therefore, to the extent that any of the individual Board Members are not entitled to dismissal under the other above stated grounds, that Board Member is separately entitled to qualified immunity as a matter of law for performing actions within the course and scope of his or her employment with TMB.

### 2.3 Allibone has not alleged a viable due process claim.

The Fifth Circuit recognizes that there is no freestanding constitutional right to be free from malicious prosecutions.[72] Instead, Allibone alleges a violation of his due process right to be free of bad faith prosecution. However, initiating proceedings without probable cause is not a violation of substantive due process as a matter of law.[73] That leaves only a claim for violation of procedural due process.

Rather than present a procedural due process claim, Allibone appears to assert some right not recognized by law: a "right" for a physician to avoid being investigated and brought to a hearing regarding medical practices. He does not identify any legal source of this "right" or any legal supporting for such an assertion.  Because of this, the claims should be dismissed.

---

[71] *See DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994), *cert. denied*, 512 U.S. 1270.
[72] *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).
[73] *Id.* at 953 (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Allibone has also not alleged a violation of procedural due process.  He admits awareness of the complaints against him, admits that he had an opportunity to respond, and that he availed himself of that opportunity.  Indeed, Allibone's pleading contains many references to the repeated hearings he has had, and admits his success in defending against such claims. Because Allibone has not alleged facts to support a prima facie claim for violation of his right to procedural due process his claims should be dismissed.

### 3.  The Dormant Commerce Clause Claim Fails.

Finally, Allibone's nebulous dormant Commerce Clause claim is fatally pleaded. At the outset, a dormant commerce clause challenge does not appear available under 1983. Section 1983 was enacted under section 5 of the Fourteenth Amendment.[74] That section authorizes Congress "to enforce, by appropriate legislation, the provisions of this article."[75] "The 'provisions of this article' to which Section 5 refers, include the Due Process Clause of the Fourteenth Amendment."[76] Thus, "for Congress to invoke § 5, it must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct."[77] Consequently, the allegation of a violation of the dormant Commerce Clause cannot state a claim under Section 1983.

Even if this claim were available, it appears wholly inapplicable to the facts at hand.  The "dormant" aspect of the Commerce Clause prohibits "economic

---

[74] *Familias Unidas v. Briscoe*, 619 F.2d 391, 405 (5th Cir. 1980).
[75] U.S. CONST. amend. XIV § 5 (emphasis added).
[76] *Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. at 637.
[77] *Id*. at 639 (emphasis added).

protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."[78] The Supreme Court has made clear "[t]ime and again," that state laws violate the Commerce Clause if they mandate "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."[79]

Allibone has failed to plead any facts to explain the economic burden on out-of-state interests stemming from the TMB's investigation of him. He also appears to turn the analysis on its head because if anyone was burdened by the investigation it was him—a physician who practices in Texas. As a result, the Court should dismiss the claim under dormant Commerce Clause.

## <u>Conclusion</u>

TMB's investigation was not a wide-ranging conspiracy to snuff out an entire submarket of medical practitioners. Instead, the sole focus of this good-faith investigation was Allibone's actions that fell below the standard of care. TMB and its Board Members should not be punished for simply fulfilling its mandate— "protect[ing] the public's safety and welfare through the regulation of the practice of medicine."[80] As a result, TMB and the Board Members respectfully request the Court dismiss all of the claims with prejudice.

---

[78] *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008).
[79] *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Oregon Waste Sys., Inc. v. Dep't of Envt'l Quality*, 511 U.S. 93, 99 (1994)).
[80] 22 Tex. Admin. Code § 161.2 (a).

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
General Litigation, Division Chief


/s/ Adam Arthur Biggs
**ADAM ARTHUR BIGGS**
Assistant Attorney General
Texas Bar No. 24077727
CHRISTOPHER D. HILTON
Assistant Attorney General
Texas Bar No. 24087727
SEAN FLAMMER
Assistant Attorney General
Texas Bar No. 24059754
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
T: (512) 475-4080
F: (512) 320-0667
adam.biggs@oag.texas.gov

***ATTORNEYS FOR DEFENDANTS***

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the above *Motion to Dismiss* was served on the **30th day of June, 2017,** via electronic filing to the following counsel of record:

Jacques G. Simon, Esq.
100 Jericho Quadrangle, Suite #208
Jericho, NY 11753
email: jgs@jacquessimon.com


*/s/ Adam Arthur Biggs*
**Adam Arthur Biggs**
Assistant Attorney General